UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DEANNA CAROLLO and DIANA J. OWENS,        16 CV 0013 (DNH) (TWD)
on behalf of themselves and all other employees
similarly situated,

                Plaintiffs,


     -against-

UNITED CAPITAL CORP., AFP MANAGEMENT
CORP., and AFP 101 CORP.,

                Defendants.
-------------------------------------------------------------------X


**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
<u>SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56</u>**


**MILMAN LABUDA LAW GROUP PLLC**

Robert F. Milman, Esq.
Jamie S. Felsen, Esq.
John M. Harras, Esq.
*Attorneys for Defendants*
3000 Marcus Ave., Suite 3W8
Lake Success, NY 11042
(516) 328-8899

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF RELEVANT FACTS................................................................2

STANDARD OF REVIEW ....................................................................................4

ARGUMENT ..........................................................................................................5

POINT I
SUMMARY JUDGMENT IS WARRANTED IN DEFENDANTS' FAVOR ON
PLAINTIFFS' NYLL § 196-d CLAIM AS DEFENDANTS DID NOT UNLAWFULLY
RETAIN PLAINTIFFS' GRATUITIES................................................................5

POINT II
SUMMARY JUDGMENT IS WARRANTED IN DEFENDANTS' FAVOR ON
PLAINTIFFS' NYLL MINIMUM WAGE CLAIMS ........................................10

   A.    Assuming *Arguendo* Defendants violated NYLL § 196-d (Which They Did Not),
Defendants Paid Plaintiffs Minimum Wages Under NYLL ...........................11

   B.    Defendants adequately notified Plaintiffs of the tip credit under NYLL, entitling
Defendants to take the tip credit......................................................................12

   C.    Even Assuming *Arguendo* that Defendants Failed to Provide Wage Statements
Pursuant to NYLL 195 (Which They Did Not), Such Failure Does Not Forfeit the
Ability to Take the Tip Credit ..........................................................................14

POINT III
SUMMARY JUDGMENT IS WARRANTED IN DEFENDANTS' FAVOR ON
PLAINTIFFS' FLSA MINIMUM WAGE CLAIM ..........................................15

   A.    Defendants provided Plaintiffs with Adequate Notice under the FLSA ...............15

   B.    Defendants' Alleged Failure to Provide Adequate Notice of the FLSA Tip Credit
is Immaterial As They Were Paid In Excess of the Regular Minimum Wage Rate.......17

POINT IV
SUMMARY JUDGMENT IS WARRANTED IN DEFENDANTS' FAVOR ON
PLAINTIFFS' FLSA OVERTIME CLAIM ........................................................19

POINT V
SUMMARY JUDGMENT IS WARRANTED IN DEFENDANTS' FAVOR ON THE
CLAIMS UNDER THE WAGE THEFT PREVENTION ACT ..........................21

POINT VI
ASSUMING *ARGUENDO* THAT ALL OF THE CLAIMS AGAINST DEFENDANT
UNITED CAPITAL CORP. ARE NOT DISMISSED FOR THE REASONS DISCUSSED
*SUPRA*, THEN THEY SHOULD BE DISMISSED BECAUSE UCC WAS NOT
PLAINTIFFS' EMPLOYER ................................................................................22

POINT VII
THE COURT SHOULD DISMISS ALL STATE CLAIMS FOR OPT-IN PLAINTIFFS
BECAUSE THEY HAVE ONLY OPTED-IN TO THIS CASE'S FEDERAL CLAIMS..23

i

**POINT VIII THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER ANY STATE LAW CLAIMS THAT MAY SURVIVE THIS MOTION**………………………………………………………………….. **24**

**CONCLUSION** ....................................................................................................**24**

## PRELIMINARY STATEMENT

Defendants are entitled to summary judgment on all of Plaintiffs' claims.

With regard to Plaintiffs' claim that Defendants violated N.Y. Labor Law § 196-d by retaining 40% of a 20% mandatory service charge paid by customers, the evidence, which Plaintiffs cannot dispute, establishes that all customers of the Radisson Utica Center Hotel (the "Hotel" or "Utica Hotel") were informed that 40% of the 20% mandatory service charge for all banquet event invoices would be retained by the Hotel to cover services and administrative costs related to the banquets.  Indeed, each banquet customer was provided with a document detailing the breakdown of the service charge's distribution.  The Hotel has a prodigious amount of documents to prove it so noticed customers, along with testimony from employees and customers. Plaintiffs, in contrast, have no basis to support their claim that Defendants did not notify customers of the service charge's distribution between the banquet servers and the Hotel.  When Plaintiffs commenced this lawsuit, they had no information regarding what the Hotel told customers about the service charge's distribution breakdown.  Plaintiffs had no basis to bring this claim.

Because Defendants did not violate N.Y. Labor Law § 196-d, Defendants did not lose the ability to take a tip credit.

In any event, notwithstanding whether Defendants violated N.Y. Labor Law § 196-d, when working as banquet servers, Plaintiffs typically were paid significantly above the minimum wage rate.

With regard to the overtime claims of Plaintiffs Bibik, Carrier, Kula, Nemeyer, Hill, Raymond, and Romanelli, the Hotel paid all required overtime for hours worked over forty (40) per week.  Moreover, Plaintiffs were exempt from overtime under 29 U.S.C. § 207(i).

1

With regard to Plaintiffs' claim that Defendants failed to pay them the minimum wage rate in violation of the FLSA and New York Labor Law ("NYLL") because they failed to notify Plaintiffs about the tip credit, the evidence establishes that the Hotel notified Plaintiffs, in writing and verbally, that their wage rate would equal the minimum wage rate under NYLL reduced by the applicable tip credit allowable under NYLL. Moreover, the Hotel had posters posted in employee areas that addressed the applicable minimum wage rate and tip credits under the NYLL and FLSA and Plaintiffs were aware of those posters. Accordingly, Defendants complied with their tip credit notice obligations.

Moreover, summary judgment must be entered in favor of Defendant United Capital Corp. ("UCC") as it was not Plaintiffs' employer under the FLSA and NYLL. UCC is located over 250 miles away from the Hotel where Plaintiffs worked. UCC did not hire the Plaintiffs, set their schedules, or their wage rates. UCC merely assesses the Hotel's profitability to determine whether it is adding value to UCC's overall portfolio of investments, which includes real estate, hotel, and manufacturing asset holdings. Thus, UCC was not Plaintiffs' employer.

Accordingly, Defendants are entitled to summary judgment, dismissing all of Plaintiffs' claims.

## STATEMENT OF RELEVANT FACTS[1]

Plaintiffs Deanna Carollo ("Carollo") and Diana Owens ("Owens"), and opt-ins Andrea Bibik ("Bibik"), Kelley Carrier ("Carrier"), Nicole Hill ("Hill"), Renee Kula ("Kula"), Sandy Nemeyer ("Nemeyer"), Scot Raymond ("Raymond"), Bonnie A. Reina ("Reina"), and Olivia Romanelli ("Romanelli") ("collectively "Plaintiffs"), worked at the Hotel as banquet servers and/or as restaurant servers. (SOF ¶ 2). When Plaintiffs worked as banquet servers, Plaintiffs

---

[1] For a full recitation of the undisputed facts and supporting evidentiary citations, the Court is respectfully referred to Defendants' Statement of Material Facts dated May 10, 2017.

were paid an hourly wage and also received a share of the gratuity portion of the service charge applied to each banquet invoice.  (SOF ¶ 3).  At all relevant periods, the gratuity portion of the service charge equaled 60% of a 20% service charge that was applied to each banquet customer's entire bill.  (SOF ¶ 3). The Hotel retained the other 40% of the 20% service charge to cover administrative costs associated with hosting the banquet events.  (SOF ¶ 4-6).

When Plaintiffs worked as servers in the Hotel's restaurant – the Garden Grille – they were paid an hourly wage, typically the minimum wage, less the applicable tip credit taken for food service workers, in addition to all tips that restaurant customers left for them.  (SOF ¶ 7-8).

All of Plaintiffs' hours were recorded by having each server, whether the server was working in banquets or in the restaurant, punch-in and punch-out on a biometric time clock with their fingerprint. (SOF ¶ 9).  The Hotel would send this time clock information to ADP, the Hotel's payroll processing company, along with information on each employee's wage rate, tips earned if the employee worked in the restaurant, and/or the amount the employee received from the distribution of the service charge on the banquet bill if the employee worked a banquet.  (SOF ¶ 9-11).  ADP, in turn, provided the Hotel with a record of each employee's total hours worked and a record of each employee's gross earnings, broken down into various categories.  (SOF ¶ 10-11).

The Hotel also instructed ADP to pay overtime to any employee who worked more than forty (40) hours a week. (SOF ¶ 12).  However, the Hotel's employees rarely ever worked any overtime hours and, if they did, they were usually exempt from overtime.  (SOF ¶ 13)

All of the Hotel's banquet servers and restaurant servers were notified of their wage rate, and any applicable tip credit, at the time of hiring, and during their employment, so there were no surprises when the employees received their paycheck, which had been processed and issued by

ADP. (SOF ¶ 9-11, 39-40).  The Hotel also posts information concerning the applicable minimum wage rate and tip credit in employee areas in the Hotel.  (SOF ¶ 40).

The Hotel also had a procedure for handling banquet event sales.  As a matter of course, when a prospective Hotel customer expressed interest in using the Hotel for a banquet event, like a wedding or conference, the customer would be referred to the Catering/Banquet Sales Department. (SOF ¶ 20-23). A representative from the Catering/Banquet Sales Department would provide the customer with (1) a Banquet Event Order ("BEO"), which specifies the accommodations necessary for the banquet, (2) a Terms and Conditions page, which informs the customer about the Hotel's policies including the breakdown of the mandatory service charge applied to all banquet events, (3) menus, and (4) a map of the venue.  (SOF ¶ 21).

In the Terms and Conditions page, customers were informed that a 20% service charge was applied to all banquets, and that 60% of that charge was retained by banquet servers and 40% was retained by the Hotel to offset costs associated with the event.  (SOF ¶ 21-27).

Thus, the Hotel complied with all labor laws at issue in this litigation.

## STANDARD OF REVIEW

To dismiss claims on summary judgment, the defendants, as the moving parties, must demonstrate that "there is no genuine dispute as to any material fact," and, thus, that they are "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  This standard imposes the initial burden on the defendant to show the absence of a "genuine" dispute over facts relevant to the plaintiff's claim, or any element thereof, which would allow a "reasonable jury" to "return a verdict for" the plaintiff.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (White, J.). "Where, as here, [the plaintiff] bears the burden of proof at trial, [the defendants] may show prima facie entitlement to summary judgment in *one of two ways*: (1) [the defendants] may point to

4

evidence that negates [the plaintiff's] claim[] *or* (2) [the defendants] may identify those portions of [the plaintiff's] evidence that demonstrate the absence of a genuine issue of material fact[.]" Salahuddin v. Goord, 467 F.3d 263, 272-73 (2d Cir. 2006) (emphasis added).

If the defendant meets its burden, the plaintiff must "go beyond the pleadings and . . . designate 'specific facts showing that there *is* a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added).  The plaintiff may not merely argue that "the jury might, and legally could, disbelieve the defendant[]," *without* offering "concrete evidence from which a reasonable juror could return a verdict in [the plaintiff's] favor." Anderson, 477 U.S. at 256.

**ARGUMENT**

**POINT I**

**SUMMARY JUDGMENT IS WARRANTED IN DEFENDANTS' FAVOR ON PLAINTIFFS' NYLL § 196-d CLAIM AS DEFENDANTS DID NOT UNLAWFULLY RETAIN PLAINTIFFS' GRATUITIES**

Plaintiffs allege in their Third Cause of Action that the Hotel required its customers to pay a service charge for banquet events from which the Hotel retained a portion even though the customers allegedly believed that the service charge was entirely a gratuity to be provided to the banquet servers.  Based on this alleged practice, Plaintiffs claim that Defendants illegally retained a portion of their "gratuities" in violation of NYLL § 196-d.  Consequently, according to Plaintiffs, Defendants allegedly (1) must pay back the retained portion to Plaintiffs; and (2) Defendants lost their ability to take a tip credit under NYLL.

When this lawsuit was commenced, Plaintiffs had no information regarding what the Hotel told customers about the breakdown of the mandatory service charge and whether any portions of it would be kept by the Hotel.  (SOF ¶ 29-30).  Moreover, Plaintiffs testified that they

do not even know the basis for their allegation that customers assumed or thought the 20% service charge was entirely a gratuity.  (SOF ¶ 30).  They simply filed this lawsuit to engage in a fishing expedition in the hope of finding evidence to support their allegation.  In fact, at least one of the named Plaintiffs – Owens – was illegally solicited by Plaintiffs' counsel.  (See ECF doc. nos. 64, 67).  Most of the other Plaintiffs joined this case after receiving solicitation letters from Plaintiffs' counsel which solicitation letters Defendants believe contain misrepresentations.  (See ECF doc. no. 26).

The evidence confirms that, contrary to Plaintiffs' counsel's theory of "let's throw it out there and hope it sticks" approach, customers were informed in writing about the breakdown of the distribution of the service charge.

The basis for Plaintiffs' claim is that NYLL § 196-d prohibits employers from retaining any portion of their employees' gratuities.

Prior to January 1, 2011, to determine whether something was a gratuity under NYLL § 196-d, courts applied a "reasonable patron standard." Samiento v. World Yacht Inc., 10 N.Y.3d 70, 79-80 (2008).  Under that standard, if an employer's agent led the patron to believe that a fixed portion of the bill was for a gratuity, then that fixed portion of the bill was required to be paid in its entirety to the employee. Id.  However, if an employer made it clear that the employer was retaining some or all of the charge, then the charge was not regarded as a gratuity and the employer was permitted to retain its portion of the charge. Tamburino v. Madison Sq. Garden, LP, 115 A.D.3d 217, 220 (1st Dep't 2014).

On January 1, 2011 the NYSDOL issued new, prospective regulations, 12 NYCRR § 146-2.18 – 2.19, which began to require employers to inform customers in writing if the employer

would be retaining a portion of the mandatory service charge and that stating that such portion of the mandatory service charge does not constitute a gratuity.

In this case, the Hotel explicitly disclosed to their customers in writing the breakdown of how the service charge would be distributed, in compliance with 12 NYCRR 146-2.19 (even before this regulation became effective). (SOF ¶ 20-27). Indeed, during the entire relevant six year statute of limitations period preceding the commencement of this action, from January 5, 2010 until the present, the Hotel informed every customer that the customers had to pay a mandatory service charge of 20% for all banquet events, of which 60% would be paid to servers that worked the banquet events and 40% would be kept by the Hotel to cover labor costs. (SOF ¶ 3-6, 21-23). This breakdown was expressed to every banquet customer in writing and verbally. (SOF ¶ 20-27).  In fact, all customers received a document entitled "Terms and Conditions" that contained a section entitled "Administrative Charge & Tax" which states that there is "an administrative charge of 20% [that] will be added to all banquet[s]. . . This service charge is distributed 12% to the event wait staff as gratuity and 8% is retained for labor expense." (SOF ¶ 5, 22).  The disclosure made by the Hotel to every banquet customer renders Defendants' retention of 40% (8% / 20% = .4) of the mandatory service charge legal under New York law.[2]

Contrary to the significant and substantial documentary evidence produced by Defendants, Plaintiffs have failed to produce one iota of admissible evidence in support of their allegation that customers were not informed by the Hotel that 40% of the 20% service charge would be kept by the Hotel.  (SOF ¶ 28-38).  See Ahmed v. Morgans Hotel Group Mgt., LLC, 2017 N.Y. Misc. LEXIS 638 at *10 (N.Y. Sup. Ct. Feb. 27, 2017) (holding that, for their NYLL § 196-d claim to

---

[2] Plaintiffs do not dispute that 60% of the service charge (12% / 20% = .6) was, in fact, distributed to the banquet event wait staff. (SOF ¶ 6).  They are merely alleging that they are owed the other 40% of the service charge that was retained by the Hotel.  See Complaint ¶ 108, Wherefore Clause, (f) (Plaintiffs are seeking "unpaid wages") (emphasis added).

survive summary judgment, plaintiffs were required to, but failed to, identify specific instances where banquet customers did not know that the hotel kept a portion of the service charge applied to the bill).

Plaintiffs' deposition testimony establishes the fundamental lack of understanding as to the basis for their claim under N.Y. Labor Law § 196-d.  Indeed, the three Plaintiffs who were deposed in this action – Owens, Bibik, and Raymond – each testified that during their employment with the Hotel, they never saw any contracts between Defendants and customers and have no idea what customers were told verbally or in writing by the Hotel concerning the breakdown of the mandatory service charge.  (SOF ¶ 29-30).  Moreover, Owens testified that the basis for her N.Y. Labor Law § 196-d claim is that she feels she should have been given the full 20% service charge because she worked for other employers that paid their employees the full mandatory service charge without retaining any portion.  (SOF ¶ 29-30).  Similarly, Raymond testified that he should have been paid the full mandatory service charge because he gets the full mandatory service charge at his current job (yet, he testified that he does not know if he was legally entitled to the full mandatory service charge from the Hotel).  (Id.).  He also testified that he joined this lawsuit because he does not know if it is legal for a Hotel to keep any portion of a mandatory service charge even if it informs the customer.  (Id.).  Bibik testified that she decided to join this lawsuit without any knowledge of what customers were told and without seeing or knowing about the contracts the customers signed.  (Id.).

Bibik and Owens testified at their depositions that their interrogatory responses wherein they identified customers that were allegedly confused about the distribution of the service charge (the only Plaintiffs to identify any customers in their interrogatory responses),[3] were inaccurate.

---

[3] No other Plaintiffs identified in their interrogatory responses any instances where a customer was unclear about the distribution of the service charge.  Felsen Decl. Exhs. F-G, L-R, interrogatory no. 12.

(SOF ¶ 50-57).   Owens states in her interrogatory response that an unnamed person at a graduation party for the "Alsheimer" family, held on June 26, 2016, was "surprised" that the servers did not retain 100% of the service charge.  (SOF ¶31).  However, upon review of its records, the Hotel found irrefutable evidence that it sent the terms and conditions page to Catherine Alsheimer, the woman who booked the event. (SOF ¶ 32).  Ms. Alsheimer signed the terms and conditions page on May 23, 2016 and the Hotel retained a copy of it.  (Id.).  Thus, this allegation of Owens was incorrect and Owens conceded at her deposition that Ms. Alsheimer was notified that 40% of the mandatory service charge would be retained by the Hotel.  (Id.).

Owens also stated in her interrogatory response that Anne Decker, who booked a baby shower with the Hotel for July 2, 2016, was not aware of the service charge distribution breakdown.  (SOF ¶ 31).  This statement, however, is also false.  Indeed, the Hotel has a screen shot of emails between Anne Decker and Nicole Trificana, the Hotel's director of banquet sales, which shows that the Hotel furnished Ms. Decker with the terms and conditions page, specifying the breakdown of the service charge distribution.  (SOF ¶ 33).   Thus, contrary to Owens' interrogatory response, Ms. Decker was informed about the service charge distribution breakdown.

Bibik also submitted an inaccurate statement in an interrogatory response.  She stated that her brother, James Loy, and her sister-in-law, Lindsey Nesci-Loy, booked a baby shower for Lindsey Nesci-Loy at the Hotel and were under the impression that the entire service charge was retained by the banquet servers.  (SOF ¶ 34).  However, at both of their depositions, James Loy and Lindsey Nesci-Loy testified that they had no involvement in the booking of the baby shower banquet and that they never received any information about the details of booking the event.  (SOF ¶ 35). Kayla Nesci, Lindsey Nesci-Loy's sister, testified at her deposition that Bibik

actually handled booking the baby shower for her sister-in-law.  (SOF ¶ 36).  Bibik conceded at her deposition that her interrogatory response regarding her sister-in-law's baby shower was inaccurate.  (SOF ¶ 37).

Other than those now debunked interrogatory responses, Plaintiffs have no admissible evidence establishing that any customer was supposedly uninformed about the service charge distribution. (SOF ¶ 38).  Again, the Plaintiffs that were deposed could not even articulate the basis for their NYLL § 196-d claim.

Therefore, Plaintiffs commenced this action without any factual basis to support their NYLL § 196-d claim.  As discussed in Defendants' motion to disqualify Plaintiffs' counsel, Thomas & Solomon, the strategy of Thomas & Solomon in this litigation was to assert allegations on Plaintiffs' behalf without any factual basis and then engage in a fishing expedition during discovery in the hope of finding evidence to support Plaintiffs' NYLL § 196-d claim.  (ECF doc. nos. 64, 67).  Thomas & Solomon failed to find any such evidence.

Because Plaintiffs have produced no admissible evidence in support of a viable NYLL § 196-d claim, and there is substantial evidence that the Hotel, in fact, informed customers about the service charge breakdown (SOF ¶ 20-27), summary judgment in favor of Defendants on Plaintiffs' NYLL § 196-d claim is warranted.

Consequently, (1) Plaintiffs are not entitled to the Hotel's 40% portion of the 20%; and (2) Defendants did not lose the ability to take the tip credit.

## POINT II

### SUMMARY JUDGMENT IS WARRANTED IN DEFENDANTS' FAVOR ON PLAINTIFFS' NYLL MINIMUM WAGE CLAIMS

Plaintiffs allege in their Fourth Cause of Action that Defendants lost their ability under NYLL to take a tip credit (and therefore, failed to pay Plaintiffs the minimum wage rate) because:

(1) Defendants violated NYLL §196-d; (2) failed to notify Plaintiffs about the tip credit; and (3) failed to provide Plaintiffs with wage statements that complied with NYLL § 195.   Each allegation must be rejected, and summary judgment entered in Defendants' favor, as discussed below.

### A. Assuming *Arguendo* Defendants violated NYLL § 196-d (Which They Did Not), Defendants Paid Plaintiffs Minimum Wages Under NYLL

As discussed *supra* (Point I), Defendants did not violate NYLL § 196-d.  However, even assuming *arguendo* that Defendants did violate NYLL § 196-d (which they did not), such a violation would have no bearing on Defendants' ability to take a tip credit.

Indeed, a NYLL § 196-d violation does not result in forfeiture of the tip credit under New York law so long as the employee receives at least the minimum wage after combining all of the employee's wages earned for the week, including hourly wages and tips (which included mandatory service charge distributions).   Courts have "relied on [NYLL § 196-d's] plain language and guidance from the New York Department of Labor to conclude that NYLL does not prohibit employers who violate section 196-d from availing themselves of a tip credit, unless the unlawful tip retention resulted in employees receiving less than the general minimum hourly wage." Murphy v. Lajaunie, 2016 U.S. Dist. LEXIS 37137 *17-19 (S.D.N.Y. Mar. 21, 2016) (citations omitted); Schear v. Food Scope Am., Inc., 297 F.R.D. 114, 133 (S.D.N.Y. 2014).  Thus, if there is a NYLL § 196-d violation, "employers are not required, under the NYLL, to reimburse an employee for the difference between minimum wage and the food service worker minimum wage, unless the violation resulted in employees receiving less than . . . New York's minimum wage." Id.

In this case, the hourly pay of the Plaintiffs combined with their tips and their receipt of the mandatory service charges from banquet events exceeded the applicable minimum wage rate

for Plaintiffs, except for an extremely limited number of instances resulting in a maximum exposure (again, assuming *arguendo* that Defendants violated NYLL § 196-d, which they did not violate) of approximately $500 combined for three (3) of the Plaintiffs for the entire six (6) year period, due, most likely to a payroll processing error.[4] Accordingly, Defendants' maximum exposure for NYLL minimum wage violations, assuming *arguendo* that Defendants violated NYLL 196-d (which they did not), is extremely *de minimis*.

As discussed *supra* (point I), however, all Hotel customers were informed of the allocation of the administrative charge (60% to banquet servers and 40% to the Hotel), entitling Defendants to take a tip credit, resulting in no minimum wage violations.  Therefore, the Court should dismiss Plaintiffs' cause of action alleging NYLL minimum wage violations based on loss of the tip credit due to an alleged (but non-existent) NYLL § 196-d violation.

**B. Defendants adequately notified Plaintiffs of the tip credit under NYLL, entitling Defendants to take the tip credit**

Prior to January 1, 2011, employers had no obligation to provide notice to employees about the amount of the tip credit.  See Elliott v. Leatherstocking Corp., 2011 U.S. Dist. LEXIS 40722 at *23 (N.D.N.Y Apr. 14, 2011).

Beginning in 2011, the New York State Department of Labor promulgated a regulation – 12 NYCRR § 146-2.2 – concerning notification requirements of the tip credit by hospitality employers to be eligible to take a tip credit.  12 NYCRR § 146-2.2 provides that an employer must provide an employee with notice of the tip credit.

The New York Department of Labor ("NYDOL") has clarified that strict compliance with 12 NYCRR § 146-2.2 is not required.  For example, on March 4, 2015, the NYDOL issued an

---

[4] $54.28 for Owens, $70.04 for Kula, and $400.46 for Romanelli are the amounts that would be owed for minimum wages for the entire six (6) year statutory period if there was a 196-d violation (which there was not).  (SOF ¶ 17; Felsen Decl. Exh. T).

opinion letter, concluding that a food service employer is eligible to claim the tip credit even when the employer fails to provide written notice of the tip credit rules where its employees understand the manner in which the employer took the tip credit. See Felsen Decl. Exh. S, Department of Labor March 4, 2015 letter. The NYDOL provided three bases for its conclusion. First, the plain language of § 146-1.3 "does not specify a 'written' notice as a precondition to claiming the tip credit," but rather only "requires an employee be 'notified of the tip credit as required in section 146-2.2 of this Part.'" Id., DOL Letter, at 2 (quoting N.Y. Comp. Codes & Regs. tit. 12, § 146-1.3). The NYDOL reasoned that "[h]ad Section 146-1.3 required a written notice of the tip credit rules, such a writing requirement would be explicit in the regulation." Id.

Second, the NYDOL discussed the "need to prevent unintended consequences, such as loss of eligibility for the tip credit for otherwise compliant employers and an unjustified windfall for employees that have actual notice of their employer's tip credit practices," as there is "no policy rationale" for reading in a written requirement to Section 146-1.3, as "written notice is not necessary to protect employees that have actual knowledge of the tip credit rules." Id.

Finally, the NYDOL noted that penalties attached to violations of the notice requirements under Section 146-2.2 "provide a sufficiently strong incentive to employers to comply with the written notice requirements . . . without being unnecessarily punitive." Id.

In Carvente-Avila v. Chaya Mushkah Rest. Corp., 2016 U.S. Dist. LEXIS 75396, *3-4 (S.D.N.Y. Mar. 1, 2016), the Court agreed with the merits of the NYDOL's rationales and adopted its conclusion holding that an employer did not lose the tip credit where it did not provide written notice to the plaintiffs but otherwise informed the plaintiffs about the tip credit.

Thus, to be eligible for a tip credit, the food server employer needs to comply with minimum wage laws and provide employees with only actual notice of the tip credit, "not notice

that complied with all requirements" under 12 NYCRR 146-2.2.  <u>Carvente-Avila</u>, 2016 U.S. Dist. LEXIS 75396 at *4.

In this case, Plaintiffs had actual notice of the tip credit.  Plaintiffs were given verbal and written notice by the Hotel about the tip credit when they were hired and throughout their employment.  (SOF ¶ 39-40).  The Hotel provided a tip credit notice that was specifically created for the Hotel, entitled "Notice of Pay Rates and Pay Day," which was signed by the employees upon receipt. (<u>Id</u>.)  The Hotel also provided employees with New York State LS 54 forms, which indicated their wage rate and the applicable tip credit.  (<u>Id</u>.)  Such forms were also signed by the employees upon receipt. The employees also understood the manner in which the tip credit was applied because the Human Resources department specifically told them as much. (<u>Id</u>.).  Finally, the Hotel had wage posters that notified the Hotel's employees about the tip credit. (<u>Id</u>.). Therefore, the Hotel was permitted to take the tip credit.

Accordingly, the Court should dismiss Plaintiffs' claim that Defendants lost the ability to take the tip credit because they failed to give notice of the tip credit to Plaintiffs.

### C. Even Assuming *Arguendo* that Defendants Failed to Provide Wage Statements Pursuant to NYLL 195 (Which They Did Not), Such Failure Does Not Forfeit the Ability to Take the Tip Credit

Plaintiffs allege, in paragraphs 123 and 124 of the Complaint, that failure to provide wages statements in accordance with NYLL § 195(3) results in a forfeiture of the tip credit.  They are wrong for several reasons.

First, the regulation authorizing employers to apply a tip credit, 12 NYCRR 146-1.3, only conditions the application of the tip credit upon the notice requirements of 12 NYCRR 146-2.2, which as detailed above, only requires that employees have actual notice of the tip credit (not necessarily written notice).

14

Second, violations of NYLL § 195 have their own statutory damages explicitly detailed in NYLL § 198, which currently caps damages for each violation of NYLL § 195 at $5,000[5] with no mention of tip credit loss.  Under the textual canon, *expression unius est exclusion alterios*, since NYLL § 198 only expresses monetary fines of up to $5,000 as damages for NYLL § 195 violations, the loss of the tip credit is not available as a penalty for such violations.  Indeed, in Carvente-Avila, the court distinguished between a violation of NYLL § 195 and 12 NYCRR 142-2.2, holding that only a violation of the latter's actual notice requirement would result in a forfeiture of the tip credit.  2016 U.S. Dist. LEXIS 75396, *3-4.

Therefore, this claim must be dismissed as a matter of law.

## POINT III

### SUMMARY JUDGMENT IS WARRANTED IN DEFENDANTS' FAVOR ON PLAINTIFFS' FLSA MINIMUM WAGE CLAIM

Plaintiffs also allege in their First Cause of Action that Defendants did not properly notify Plaintiffs of the tip credit under the FLSA, resulting in the forfeiture of the FLSA tip credit.  As discussed above and below, Plaintiffs were sufficiently notified of the tip credit to satisfy the notice requirements of the FLSA.  Even assuming *arguendo* that Defendants did not sufficiently notify Plaintiffs about the tip credit in accordance with the FLSA (which they did), the service charge disbursements received by the Plaintiffs – which may be used in their entirety to satisfy the monetary requirements of the federal minimum wage law – sufficiently make up any shortcoming for any loss of the FLSA tip credit.

#### A. Defendants provided Plaintiffs with Adequate Notice under the FLSA

The only statutory language governing notice of the tip credit under the FLSA is that the tip credit provisions of the FLSA "shall not apply with respect to any tipped employee unless

---

[5] Each violation of the statute was capped at $2,500 until February 26, 2015, when the maximum penalty increased to $5,000.

such employee has been informed by the employer of the [tip credit] provisions." 29 U.S.C. § 203(m).  Courts have held that this requirement of informing employees about the tip credit under the FLSA may be accomplished a number of ways – orally, through the posting of wage posters at the workplace, written explanation, or some similar mode of communication.  <u>Hinckley v. Seagate Hospitality Grp., LLP</u>, 2016 U.S. Dist. LEXIS 152799, *45-46 (W.D.N.Y. Nov. 2, 2016) ("It has been held that in order to comply with this provision, an employer must <u>tell</u> a tipped employee [about the tip credit provisions.]") (emphasis added);  <u>Franco v. Jubilee First Ave. Corp.</u>, 2016 U.S. Dist. LEXIS 114191 (S.D.N.Y. Aug. 25, 2016) ("the FLSA has no requirement that employees also receive written notice of the tip-credit election.");  <u>Velez v. 111 Atlas Rest. Corp.</u>, 2016 U.S. Dist. LEXIS 107230 at *21 (E.D.N.Y. Aug. 11, 2016) (stating that "employers [may] give tip credit notice under the FLSA either orally or in writing" and stating that prominently displayed wage posters may also satisfy FLSA).

In short, the notice requirement under the FLSA is similar to that under NYLL – the employer need only demonstrate that the employees had actual knowledge, regardless of how they were informed, of the tip credit.

In this case, as discussed above, Plaintiffs were informed of the tip credit. (SOF ¶ 39-40). The Hotel informed them verbally, provided them with wage notice forms indicating the applicable tip credit, and posted FLSA and NYLL wage posters in the Hotel informing them of the tip credit.  (<u>Id</u>.)

Also, the Hotel always applied the New York tip credit, which was smaller than the tip credit allowed under Federal law.  <u>Compare</u> 12 NYCRR § 146-1.3 <u>with</u> 29 C.F.R. § 531.59 Therefore, even if there was no federal tip credit applied, the Plaintiffs' regular rate was typically higher than the federal minimum wage rate of $7.25 during the applicable time.  <u>See</u> 29 U.S.C. §

206 (a)(1)(C).  Also, since the New York tip credit is less than the federal tip credit, if the Hotel applied the New York tip credit and only informed the employee about the New York tip credit (as it was the only tip credit being applied), then the employer's obligations to notify the employee about the tip credit under both federal and New York law would be satisfied.  Both laws would be satisfied under such a scenario because both sets of laws only require that the employee be notified of the lawful tip credit.

In this case, as discussed, above, the Hotel complied with its NYLL tip credit notice obligations.  Therefore, the Hotel also complied with the FLSA tip credit notice obligations.

Accordingly, summary judgment is warranted on Plaintiffs' FLSA minimum wage violation claim.

**B. Defendants' Alleged Failure to Provide Adequate Notice of the FLSA Tip Credit is Immaterial As Plaintiffs Were Paid In Excess of the Regular Minimum Wage Rate**

Under the FLSA, when "service charges" are distributed to employees, such payments "may be used in their entirety to satisfy the monetary requirements" of the federal minimum wage law. 29 C.F.R. § 531.55 (b).  Service charges, for FLSA purposes, are not tips and may be included as wages to satisfy any minimum wage deficiencies. 29 C.F.R. § 531.55 (a), (b); Barenboim v. Starbucks Corp., 698 F.3d 104, 112 (2d Cir. 2012) ("Tips under the FLSA . . . do not include such obligatory service charges.")  Accordingly, an employer may disburse service charges to satisfy FLSA minimum wage requirements or the employer may retain the mandatory service charge and continue to apply a tip credit.  Id.; Barenboim, 698 F.3d at 112 (holding that, under the FLSA, an "employer may retain portions of [the service] charge [dedicated for employees] and still claim a tip credit."

Thus, similar to NYLL, under federal law, as long as the combination of the employee's hourly wage rate and the mandatory service charges received by the employee exceed minimum

wage requirements, then there is no violation of minimum wage laws.[6]   See Hart v. Rick's Cabaret Int'l Inc., 60 F. Supp. 3d 447, 455 (S.D.N.Y. 2014) (holding that the regulations under the FLSA, specifically 29 C.F.R. § 531.55, allow service charges to be "applied against an establishment's FLSA minimum wage duty," especially when the service charge receipts are included in the employer's gross receipts); Alderman v. 21 Club Inc., 733 F. Supp. 2d 461, 470 (S.D.N.Y. 2010); Heng Chan v. Triple 8 Palace, Inc., 2006 U.S. Dist. LEXIS 15780, 14-15 (S.D.N.Y. Mar. 30, 2006).

In this case, the Hotel included all receipts from the mandatory service charges on banquet invoices in its gross receipts. (Tuohy Decl. ¶ 16). Also, for Plaintiffs Nemeyer, Hill, and Raymond, the mandatory service charge disbursement coupled with their hourly wage payments satisfied the Hotel's FLSA obligations without taking a tip credit. (See SOF ¶ 18, Tuohy Decl. Exh. B; Felsen Decl. Exh. T). Thus, in the unlikely event that the Court *arguendo* finds that Defendants did not satisfy the FLSA tip credit notice requirement, Plaintiffs Nemeyer, Hill, and Raymond were, in any event, paid the regular minimum wage under the FLSA.

For the remaining Plaintiffs, assuming arguendo that Defendants lost the ability to take a tip credit under the FLSA, their minimum wage damages *in toto* for the entire three (3) year statutory FLSA period would be for a *de minimis* amount of approximately $3,000.00.[7]   This amount reflects the rare weeks during the entire FLSA statutory period of three (3) years where Plaintiffs' service charge receipts and wages, combined, did not meet the applicable FLSA minimum wage requirements (taking into account the assumption of the loss of the tip credit, which as discussed *supra*, should not be lost).

---

[6] NYLL allows the employer to combine wages, tips, and receipts from banquet service charge disbursements; whereas FLSA only allows the employer to combine wages and receipts from banquet service charge disbursements.

[7] Such damages, for the entire three (3) year FLSA period, would be allocated as follow: Bibik - $224.30; Carollo - $349.93; Carrier - $537.06; Kula - $50.80; Owens - $1,608.58; Romanelli - $256.30.  (Felsen Decl. Exh. T).

Accordingly, summary judgment is warranted on Plaintiffs' minimum wage claim under the FLSA.

## POINT IV

### SUMMARY JUDGMENT IS WARRANTED IN DEFENDANTS' FAVOR ON PLAINTIFFS' FLSA OVERTIME CLAIM

Plaintiffs allege in their Second Cause of Action that the mandatory service charge disbursement to them must be included in their regular wage rate under the FLSA, resulting in a higher overtime rate for Plaintiffs who worked in excess of forty (40) hours in any weeks.

Plaintiffs, however, were exempt from overtime. Under section 7(i) of the FLSA, 29 U.S.C. §207(i), if an employee receives more than 50% of his or her income from commissions for a representative period of no less than one (1) month and his or her total weekly income equals more than time-and-a-half for all hours worked for the representative period, then he or she is exempt from overtime.

This exemption has been applied to banquet servers, and it is well-established that the mandatory service charge portion of a banquet servers' compensation constitutes "commissions" for purposes of section 7(i) of the FLSA, 29 U.S.C. § 207(i). Mechmet v. Four Seasons Hotels, Ltd., 825 F.2d 1173, 1178 (7th Cir. Ill. 1987) (holding that, for purposes for 29 U.S.C. § 207(i), "the percentage service charges used to compensate the Ritz-Carlton's banquet waiters can only be 'commissions.'"); Diaz v. Amedeo Hotels Ltd. P'ship, 2016 U.S. Dist. LEXIS 41453 at *8 (E.D.N.Y. Mar. 29, 2016) ("Mandatory service charges for waiters that are calculated as a percentage of total banquet bill qualify as commissions for the 7(i) exemption.") (citing Mechmet, 825 F.2d at 1178).

It is also well-established, as discussed previously, that a banquet server's weekly income, for FLSA purposes, includes both the mandatory service charge and the hourly wage rate. Thus,

the overtime exemption in section 7(i) of the FLSA applies to Plaintiffs, all banquet servers in the hotel.

In this case, there was very little overtime worked, if any, by the Plaintiffs. (SOF ¶ 13). For most of the overtime that was worked, Plaintiffs were exempt from overtime because they meet the criteria of section 7(i) of FLSA. (SOF ¶ 11, 19; Felsen Decl. Exh. F, Owens Tr., 51; Felsen Decl. Exh. E, Bibk Tr., 49-51, Felsen Decl. Exh. T).[8]  Based on the existence of the exemption, no overtime is owed to Bibik, Carrier, Kula, Nemeyer, Hill, Raymond, and Romonelli.  (SOF ¶ 19; Felsen Decl. Exh. T). Accordingly, summary judgment should be entered against those Plaintiffs, dismissing their overtime claims.[9]

Therefore, the Court should enter summary judgment in favor of Defendants for the overtime claims under the FLSA for all Plaintiffs aside from Owens and Carollo.

---

[8] In Exhibit T of Jamie Felsen's Declaration, Defendants have provided an analysis of each Plaintiffs' gross wages. In Column U, "commission 50% of income," each Plaintiff's receipts from the banquet service charge (Column M, entitled "Banquet Mandatory Service Charge Tips") is divided by his or her gross pay (Column H "Gross Pay").  If the result is above .5, then that means commissions were above 50% of the Plaintiff's gross income for the period, satisfying one element of the 207(i) exemption.  Column T entitled "OT Damages w/207(i) application (Part One Gross Pay greater than time and a half)," subtracts each Plaintiff's gross pay (Column H, "Gross Pay") from the amount the plaintiff would be entitled to if he or she received overtime compensation based on the federal minimum wage ($7.25 x 1.5 = 10.88) ("FLSA Overtime Rate") for all hours worked.  If the number is negative, then that means that the plaintiff received more in actual gross receipts than if he or she was compensated at the FLSA Overtime Rate for all hours worked.  If those results for each week, after being combined at the end of the month, equal a negative number, then that means that, for the entire month, actual gross receipts exceeded the amount Plaintiff would have earned at the FLSA Overtime Rate for every hour worked for that entire month.  If that is the case, then the other element of 207(i) is satisfied. If the Plaintiff satisfied both of those elements, then they were exempt from overtime for that month. (SOF ¶ 19).

[9] The remaining Plaintiffs, Owens and Carollo, only have *de minimis* claims for overtime damages for the entire three (3) year FLSA period of $1,779.44 for Carollo and $411.91 for Owens.  (SOF ¶ 19; Felsen Decl. Exh. T).  These damages were uncovered by Defendants for the first time during discovery and presumably are due to ADP payroll processing errors. (SOF ¶ 19).  No Plaintiffs ever complained about unpaid overtime. (SOF ¶ 19).

**POINT V**

**SUMMARY JUDGMENT IS WARRANTED IN DEFENDANTS' FAVOR ON THE CLAIMS UNDER THE WAGE THEFT PREVENTION ACT**

Plaintiffs allege in their Fifth Cause of Action that Defendants are subject to penalties of $2,500 per employee for violating NYLL§ 195(1) which requires employers to provide written notices of wage rates at the time of hiring.

Under NYLL § 195, an employer must provide his or her employees, in writing, in English a notice containing the information about the employer, the employee's wage rate, any applicable tip credit, and the employee's type of payment, e.g., hourly.

NYLL § 195(1) became effective on April 9, 2011.  See Changxing Li v. Kai Xiang Dong, 2017 U.S. Dist. LEXIS 32222 (S.D.N.Y. Mar. 7, 2017); Andrade v. 168 First Ave Rest. Ltd., 2016 U.S. Dist. LEXIS 72678 (S.D.N.Y. June 3, 2016); Inclan v. New York Hospitality Grp., Inc., 95 F. Supp. 3d 490 (S.D.N.Y. 2015) and does not apply retroactively. See Gold v. N.Y. Life Ins. Co., 730 F.3d 137, 143-44 (2d Cir. 2013). Because Plaintiffs Kula, Owens, and Raymond commenced their employment with the Hotel prior to April 9, 2011. (SOF ¶ 10), the claims of Kula, Owens, and Raymond under NYLL§ 195(1) must be dismissed as a matter of law.

As previously discussed, the Hotel provided Plaintiffs Owens, Carollo, Neymeyer, Bibik, and Hill with Notices of Pay Rates when they were hired. (SOF ¶ 38-40). The Hotel also provided Carrier and Romanelli with such notice, but the Hotel is unable to locate a copy of their notices. (Id.).

Accordingly, summary judgment should be entered in Defendants' favor.

Moreover, even assuming *arguendo* that Defendants did not comply with NYLL § 195(1) for any of the Plaintiffs, there can be no liability imposed on Defendants.  Indeed, NYLL § 198 provides Defendants with an affirmative defense to avoid liability from a NYLL § 195(1)

21

violation if Defendants either (1) made complete and timely payment of all wages due to Plaintiffs pursuant to NYLL; or (2) reasonably believed in good faith that it was not required to provide the employee with notice pursuant to NYLL § 195.

As discussed herein, Defendants did timely pay Plaintiffs all wages due to them, (SOF ¶ 34) and did not lose the ability to take a tip credit. See Murphy v. Lajaunie, 2016 U.S. Dist. LEXIS 37137 *17-19 (S.D.N.Y. Mar. 21, 2016); Schear v. Food Scope Am., Inc., 297 F.R.D. 114, 133 (S.D.N.Y. 2014).

Accordingly, summary judgment is warranted in favor of Defendants on Plaintiffs' NYLL § 195(1) claim.

## POINT VI

**ASSUMING *ARGUENDO* THAT ALL OF THE CLAIMS AGAINST DEFENDANT UNITED CAPITAL CORP. ARE NOT DISMISSED FOR THE REASONS DISCUSSED *SUPRA*, THEN THEY SHOULD BE DISMISSED BECAUSE UCC WAS NOT PLAINTIFFS' EMPLOYER**

An employer-employee relationship exists when the evidence shows that the company exercises control over the results produced or the means used to achieve the results. In re 12 Cornelia Street, Inc., 56 N.Y.2d 895, 897 (1982). "Incidental control over the results produced without further evidence of control over the means employed to achieve the results will not constitute substantial evidence of an employer-employee relationship." Matter of Hertz Corp., 2 N.Y.3d 733, 735 (2004) (citations omitted). In the context of cases involving the FLSA and NYLL, such as this case, in determining if an alleged employer is, in fact, an employer under the FLSA and NYLL, courts consider the totality of the circumstances between alleged employer and employee, but focus on the following factors, which constitute the "economic realities" test: whether the putative employer could "(1) hire and fire the putative employees, (2) supervise and control their work schedules or conditions of employment, (3) determine the rate and method of

payment, [and] (4) maintain employment records." <u>Graziadio v. Culinary Inst. of America</u>, 817 F.3d 415, 422 (2d Cir. 2016) (noting that these "economic reality" factors are used to determine employer-employee status under the FLSA); <u>Ling Nan Zheng v. Liberty Apparel Co.</u>, 355 F.3d 61, 66 (2d Cir. 2003) (applying these factors to a case involving allegations under FLSA and NYLL).

In this case, UCC does not satisfy the economic realities test.  UCC is a conglomerate holding company.  (SOF ¶ 42).  It owns many subsidiary companies that deal with real estate, manufacturing, and hotels.  (<u>Id</u>.) One of those subsidiaries is AFP Hospitality Corp. ("AFP Hospitality"), the corporation that owns AFP101 Corp. ("AFP101").  (SOF ¶ 44).  Thus, there are two (2) levels of entities that separate the Plaintiffs and UCC: AFP101 and AFP Hospitality.

UCC does not set wage rates or schedules for employees at the Utica Hotel, such as the Plaintiffs. (SOF ¶ 50-51).  UCC also does not fire Utica Hotel employees like the Plaintiffs. (<u>Id</u>.) Moreover, UCC is physically located at 9 Park Place, Great Neck, NY 11021, which is approximately 250 miles away from the Hotel, (SOF ¶ 43), making it impossible to have the level of control over plaintiffs that is required to be an employer under FLSA and NYLL.  In fact, UCC employees rarely visit the hotels that UCC owns through its subsidiary AFP Hospitality. (SOF ¶ 52).  Accordingly, UCC is not plaintiffs' employer and, therefore, is not liable for any FLSA or NYLL violations (assuming there are any such violations, which there are not).

Therefore, UCC is entitled to summary judgment, dismissing all claims asserted against it.

**POINT VII**

**THE COURT SHOULD DISMISS ALL STATE CLAIMS FOR OPT-IN PLAINTIFFS BECAUSE THEY HAVE ONLY OPTED-IN TO THIS CASE'S FEDERAL CLAIMS**

It is well established that, when an individual opts-in to a FLSA collective action, pursuant to 29 U.S.C. § 216(b), that individual only opts-in to the federal FLSA claims of that action, not

23

the state claims. <u>Shayler v. Midtown Investigations, Ltd.</u>, 2013 U.S. Dist. LEXIS 29540 *3 n.1 (S.D.N.Y. Feb. 27, 2013) (holding that, when an opt-in joins a FLSA claim wherein the named Plaintiff has asserted state law claims, the opt-in does not automatically join those state claims—the opt-in has to affirmatively assert those state claims by himself or herself).

In this case, the opt-in Plaintiffs have asserted none of the state law claims. They have merely joined the FLSA claims of Carollo and Owens. Accordingly, the opt-ins may not recover under any state law claims.

## POINT VIII

## THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER ANY STATE LAW CLAIMS THAT MAY SURVIVE THIS MOTION

While Defendants respectfully submit that all of Plaintiffs' state law claims should be dismissed in their entirety with prejudice, should the Court dismiss all of Plaintiffs' federal claims but not dismiss some of Plaintiffs' state law claims, it is respectfully requested that the Court decline to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(c)(3); <u>see also</u> <u>Levitin v PaineWebber, Inc.</u>, 933 F. Supp. 325, 327 (S.D.N.Y. 1996), <u>aff'd</u>, 159 F.3d 698 (2d Cir 1998); <u>Li v. Cheng</u>, 2012 U.S. Dist. LEXIS 40151 (E.D.N.Y. Mar. 21, 2012).

## <u>CONCLUSION</u>

Defendants respectfully request that the Court grants Defendants' Motion for Summary Judgment, dismissing all of Plaintiffs' claims.

Dated: May 12, 2017
     Lake Success, NY

     /s/ Jamie S. Felsen_____
     Robert F. Milman, Esq.
     Jamie S. Felsen, Esq.
     John M. Harras, Esq.
     MILMAN LABUDA LAW GROUP PLLC
     3000 Marcus Avenue, Suite 3W8
     Lake Success, NY 11042
     (516) 328 -8899