UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
DEANNA CAROLLO and DIANA J.
OWENS, on behalf of themselves and all
other employees similarly situated,

                Plaintiffs,

    -v-                          6:16-CV-13

UNITED CAPITAL CORP., AFP
MANAGEMENT CORP., and AFP 101
CORP.,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                OF COUNSEL:

THOMAS, SOLOMON LAW FIRM    J. NELSON THOMAS, ESQ.
Attorneys for Plaintiffs           JESSICA L. LUKASIEWICZ, ESQ.
693 East Avenue                MICHAEL J. LINGLE, ESQ.
Rochester, New York 14607       PATRICK J. SOLOMON, ESQ.

VIRGINIA & AMBINDER LLP       JOHN M. HARRAS, ESQ.
Attorneys for Defendants
40 Broad Street, Suite 7th Floor
New York, New York 10004

MILMAN LABUDA LAW GROUP PLLC  ROBERT F. MILMAN, ESQ.
Attorneys for Defendants          JAMIE S. FELSEN, ESQ.
3000 Marcus Avenue, Suite 3W8
Lake Success, New York 11042

DAVID N. HURD
United States District Judge

## **MEMORANDUM-DECISION and ORDER**

# Table of Contents

I. INTRODUCTION……………………………………………………………...........3

II. BACKGROUND………………………………………………………………4

III. LEGAL STANDARD…………………………………………………………6

   A. SummaryJudgment………………………………………………………6

   B. Rule 23 Class Certification………………………………………………7

   C. FLSA Class Certification…………………………………………………8

IV. DISCUSSION…………………………………………………………………9

   A. Summary Judgment………………………………………………………10

   B. Rule 23 Class Certification………………………………………………13

      1. Rule 23(a)…………………………………………………………16

        a.    Numerosity………………………………………………...16

        b.    Commonality……………………………………………20

        c.    Typicality………………………………………………23

        d.    Adequacy………………………………………………24

        e.    Ascertainability…………………………………………28

      2. Rule 23(b)(1)(A)…………………………………………………30

      3. Rule 23(b)(3)………………………………………………………31

   C. FLSA Certification………………………………………………………36

   D. Adequacy of Plaintiffs' Proposed Notice…………………………………44

      1. Rule 23 Notice……………………………………………………44

      2. FLSA Notice………………………………………………………46

V. CONCLUSION………………………………………………………………47

## I. <u>INTRODUCTION</u>

The Radisson Hotel-Utica Centre (the "hotel") is, as its name suggests, a hotel in the city of Utica.  An important part of the hotel's business comes from its food service offerings through both the Garden Grille (the "restaurant")—the hotel's featured restaurant—and from a banquet space the hotel rents out from time to time.  Plaintiffs Deanna Carollo ("Carollo") and Diana J. Owens ("Owens" and together with Carollo "plaintiffs") are erstwhile hotel employees.  At various times, plaintiffs worked as servers for the restaurant, for banquets, or both.  In either capacity, plaintiffs were paid an hourly wage below the mandatory minimum—commonly called a "subminimum wage" among businesses that employ them—plus tips.

Plaintiffs filed this class action complaint against defendants United Capital Corp., the company that owns the hotel, as well as AFP Management Corp. and AFP 101 Corp., the entities that apparently managed the hotel during portions of plaintiffs' employment.  Plaintiffs' complaint alleges that the hotel's policies for paying its servers violate New York and federal law in five ways and across five counts: (I) paying employees a wage below the mandatory minimum in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206(a); (II) not properly compensating service workers[1] for

---

[1] Plaintiffs use the phrase "service workers" to lump together servers, service captains, and bartenders.  The Court follows the same practice, and only refers to "servers" when discussing that specific job title.

3

overtime in violation of FLSA provision 29 U.S.C. § 207(a); (III) illegal

retention of gratuities in violation of New York Labor Law ("NYLL") § 196-d;

(IV) a minimum wage violation under NYLL under NYLL § 652; and

(V) failure to provide a proper wage notice in violation of NYLL § 195.1.

Defendants have moved for summary judgment against plaintiffs'

complaint under Federal Rule of Civil Procedure ("Rule") 56.  Plaintiffs

moved to certify a class action under both FLSA, 29 U.S.C. § 216(b)

("§ 216(b)") and Rule 23.  Those motions, having been fully briefed, will now

be decided on the basis of the parties' submissions without oral argument.

## II. <u>BACKGROUND</u>

Plaintiffs worked for the hotel as servers, whether in the restaurant or for

banquets.  Dkt. 68-1, Defendants' Statement of Material Facts ("DSMF"),

¶ 2.[2]  As banquet servers, plaintiffs earned an hourly wage that was

supplemented by a mandatory service charge of 20% of the customer's base

bill.  *See id.* ¶ 3.  But that service charge did not belong to the service workers

alone.  *See id.* ¶ 4.  Instead, the service workers would evenly split a portion

of the service charge equal to 12% of the customer's base bill, while the hotel

would keep the remaining portion of the service charge, or 8% of the

customer's base bill, to cover administrative expenses.  *Id.* ¶¶ 3-4; Dkt. 76-13

---

[2] The facts are taken from defendants' statement of material facts where admitted by plaintiffs, or from other record evidence.  Disputed facts are flagged and supported by citations to either the proponent's statement of material facts or to record evidence.

("McCurdy Dep."), p. 3[3] (noting that "banquet servers, captains, [and] bartenders" would split 12% of bill between them).

Generally, the hotel paid service workers the lowest wage permitted under state and federal law. DSMF ¶ 8. However, state and federal laws allow employers of hourly, tipped, food service workers to claim a "credit" that permits them to pay a "subminimum" wage below the standard minimum so long as the tips their employees earn bring their wages to or above the minimum wage. *Id.* Whether defendants violated those laws is the basis of the parties' disagreement in this case.

The hotel maintained a timecard system and employee earning reports to keep track of their employees' wages. DSMF ¶ 10. The parties agree that if a server worked more than forty hours in a week, she would be paid overtime, but they disagree as to whether the hotel paid that overtime at the proper rate. *Compare* DSMF ¶ 12, *with* Dkt. 76-24, Plaintiffs' Statement of Material Facts ("PSMF"), ¶ 12. The parties also disagree as to whether the hotel provided its employees with a wage notice, either in the form of a document signed by the employee as required by state law or through a posted notice that would satisfy federal law. *Compare* DSMF ¶¶ 39-40, *with* PSMF ¶¶ 39-40.

---

[3] Pagination corresponds with CM/ECF.

Evidently, this pay arrangement began to grate on plaintiffs, who filed this class complaint.  United States Magistrate Judge Thérèse Wiley Dancks set a deadline for the parties to conduct class discovery.  The parties conducted discovery to that end.

## III.  <u>LEGAL STANDARD</u>

### A. <u>Summary Judgment</u>

Summary judgment under Rule 56 is warranted if the entirety of the parties' submissions show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing FED. R. CIV. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a dispute of a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  The movant bears the burden of pointing the court to the materials that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Additionally, a court considering a summary judgment motion "must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party."  *Ward v. Stewart*, 286 F. Supp. 3d 321, 327 (N.D.N.Y. 2017) (citing *Jeffreys v. City of New York*, 426 F.3d 549, 553

(2d Cir. 2005)).  Even so, a non-movant's conclusory allegations without support from record evidence are insufficient: the non-movant must "put up or shut up."  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).  At bottom, summary judgment tasks the Court with assessing the assembled evidence and determining whether a reasonable factfinder could find in the nonmovant's favor.  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).

## B. Rule 23 Class Certification

Class certification is the exception, not the rule, so the party moving for class certification "must affirmatively demonstrate" compliance with Rule 23. *Wal-Mart Stores, Inc. v.* Dukes, 564 U.S. 338, 350 (2011).  A plaintiff's burden under Rule 23 is satisfied if she can prove that a class action is appropriate by a preponderance of the evidence.  *Teamsters Local 445 Freight Div. Pension, Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008).

A plaintiff's proof must first survive a "rigorous analysis" of whether Rule 23(a)'s requirements have been satisfied.  *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)).  There are four: "(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation."  *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 538 (2d Cir. 2016).

But even if Rule 23(a) is satisfied, the plaintiff must also prove that one of the three subcategories of permissible class actions under Rule 23(b) fit the particular case. *See* FED. R. CIV. P. 23(b) (noting that class action may be maintained if Rule 23(a) is satisfied and if case fits criteria for one of three class action forms). "Such an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim . . . because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast*, 569 U.S. at 33-34 (cleaned up).

In addition, the Second Circuit has noted that a purported class must "be defined using objective criteria that establish a membership with definite boundaries," under what courts refer to as the "ascertainability doctrine." *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017).

**C. <u>FLSA Class Certification</u>**

Under FLSA § 216(b), district courts "have discretion, in appropriate cases," to provide notice of a pending FLSA claim to potential plaintiffs so that they may "opt in" to that claim. *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010). The decision of whether to employ § 216(b) follows a two-step method. *Id.* at 555.

The first step tasks a court with deciding whether to send notice to potential opt-in plaintiffs who may be "similarly situated" to the named

8

plaintiffs in the present action. *Myers*, 624 F.3d at 555. The inquiry in the first step uses a "low standard of proof" and only requires a "modest factual showing" that the named plaintiffs and the potential opt-ins "were victims of a common policy or plan that violated the law." *Id.*

The second step determines whether a collective FLSA action is fit to proceed by reviewing a more complete factual record to determine whether the opt-ins are, in fact, similarly situated to the named plaintiffs. *Myers*, 624 F.3d at 555. If that record shows that the opt-ins are not so similarly situated to the named plaintiffs, the case may be "de-certified," and the opt-in's claims dismissed without prejudice. *Id.*

The Second Circuit has cautioned that FLSA certification "not only imposes a lower bar than Rule 23, it imposes a bar lower in some sense even than Rules 20 and 42, which set forth the relatively loose requirements for permissive joinder and consolidation at trial." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 520 (2d Cir. 2020). Consequently, courts must take care not to equate the requirements of § 216(b) with those of Rule 23. *Id.*

## IV. <u>DISCUSSION</u>

Obviously, there is no point in reaching a decision on class certification if the claims the class would bring are fundamentally meritless. Accordingly, the Court will begin by considering whether defendants' motion for summary judgment disposes of this case at this juncture. But before reaching the

merits of defendants' arguments, the Court must consider plaintiffs'
arguments that the time is not ripe to consider a summary judgment motion.

### A. **Summary Judgment**

To that end, plaintiffs invoke Rule 56(d) to delay the Court's consideration
of defendants' motion for summary judgment.  Rule 56(d) permits a district
court to defer, deny, or otherwise tailor a motion for summary judgment "[i]f
a nonmovant shows by affidavit or declaration that, for specified reasons,
[she] cannot present facts essential to justify [her] opposition[.]"  FED. R. CIV.
P. 56(d).  In the Second Circuit, a Rule 56(d) affidavit must lay out: (1) what
facts the nonmovant wants to use to resist the motion and how the
nonmovant would obtain them; (2) "how those facts are reasonably expected
to create a genuine issue of material fact"; (3) what effort the nonmovant
made to obtain them; and (4) why the nonmovant failed to do so.  *Miller v.
Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir. 2003).

In other words, a party seeking to delay a decision on summary judgment
through Rule 56(d) "must show that the material sought is germane to the
defense, and that it is neither cumulative nor speculative[.]"  *Alphonse Hotel
Corp. v. Tran*, 828 F.3d 146, 151 (2d Cir. 2016) (citing *Paddington Partners v.
Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994)).  "[A] bare assertion that the
evidence supporting a plaintiff's allegation is in the hands of the defendant is
insufficient."  *Id.*

For their part, plaintiffs have provided an affidavit from their former attorney Sarah Cressman ("Ms. Cressman")[4] as required by Rule 56(d). Dkt. 75.  Ms. Cressman provides a long list of discovery evidence that she believes would help plaintiffs to establish a dispute of material facts.  *Id.* ¶¶ 3(a)-(g), 5(a)-(d), 7(a)-(b), and 9(a)-(e).

That list includes document requests to illuminate the roles of the varied defendants, requests to depose hotel customers who may have believed that their service charge would be paid directly and entirely to the service workers, and attempts to learn whether and to what extent the employees received notice of the hotel's use of a tip credit to pay them a subminimum wage.  Cressman Aff. ¶¶ 3(a)-(g), 5(a)-(d), 7(a)-(b), and 9(a)-(e).  Those facts are specific enough to satisfy the first requirement of a Rule 56(d) affidavit. *Miller*, 321 F.3d at 303.

Ms. Cressman has also explained in the affidavit how the testimony and documents she called for would create genuine issues of material fact. Cressman Aff. ¶¶ 4, 6, 8, 10.  Some of her contemplated discovery would shed light on "whether customers were always provided written notice of the distribution of the service charge" to cast doubt on whether defendants

---

[4] In the years since these motions were filed, Ms. Cressman has withdrawn as plaintiffs' counsel. Dkt. 86.

properly followed NYLL's requirement of notice to customers of their service charge policy. *Id.* ¶ 4.

Other portions would probe into whether the employees received wage and tip notices. Cressman Aff. ¶ 6. The list goes on, but in every instance plaintiffs have provided a specific purpose to every piece of discovery they seek, and explained how each piece addresses a material issue of fact relevant to trial. *Id.* ¶¶ 4, 6, 8, 10. It is certainly conceivable that plaintiffs' contemplated merits discovery would create issues of fact to disrupt defendants' arguments. As a consequence, Ms. Cressman's Rule 56(d) affidavit clears the second hurdle. *Miller*, 321 F.3d at 303.

Finally, Ms. Cressman's affidavit also explains plaintiffs' reasons for not obtaining that discovery before defendants' motion. Specifically, the affidavit points out that "the parties have only engaged in limited discovery focused on class certification issues." Cressman Aff. ¶ 11. The docket sheet confirms plaintiffs' interpretation of the discovery process thus far to be accurate. The docket sheet makes repeated reference to "class discovery," but is completely silent as to a timeline for merits discovery. *See, e.g.*, Text Minute Entry dated 3/30/2017 (Magistrate Judge Dancks noting that "Class Discovery due 4/14/2017").

Defendants are correct that plaintiffs have had more than a year to obtain documents and testimony. However, plaintiffs properly spent that time

focusing their discovery efforts entirely on the issue of class certification.  *See* Text Minute Entry dated 3/30/2017; Cressman Aff. ¶ 11.  This explanation amply answers why plaintiffs were not able to obtain this discovery before now, clearing the third and fourth requirements of Rule 56(d).  *Miller*, 321 F.3d at 303.

Having met all four of Rule 56(d)'s requirements, plaintiffs have proven that considering defendants' motion for summary judgment now would be improper.  *Miller*, 321 F.3d at 303.  Defendants' motion for summary judgment must therefore be denied without prejudice to renew once plaintiffs have had an opportunity to conduct merits discovery.

## B. Rule 23 Class Certification

Now that it is clear that plaintiffs' claims survive for the moment, the Court can turn its attention to plaintiffs' motion for class certification. Plaintiffs request to certify four subclasses of hourly hotel employees under Rule 23: (1) the Unpaid Gratuity Subclass, or all banquet service workers in the six years before plaintiffs filed their claim through final judgment in this case (the "relevant timeframe") who did not receive the full service charge; (2) the Banquet Service Subminimum Wage Subclass, or all banquet service workers paid below minimum wage for the relevant timeframe; (3) the Hourly Tipped Restaurant Service Subminimum Wage Subclass, or all hourly tipped restaurant service workers who were paid below minimum wage for

the relevant timeframe; and (4) the Wage Theft Prevention Act Subclass, or all hourly hotel employees who did not receive proper wage notices during the relevant timeframe.  Dkt. 1, ¶¶ 59(a)(d).

Plaintiffs contend that each class meets all four requirements of Rule 23(a).  In addition, plaintiffs argue that each class meets the requirements of Rule 23(b)(1)(A), Rule 23(b)(3), and Rule 23(c)(4),[5] and should thus be certified.  Defendants respond that plaintiffs' showing on all of these requirements is insufficient.

An accurate assessment of whether the class certification mechanism is an appropriate means of resolving plaintiffs' claims first calls for some explanation of what claims plaintiffs are bringing.  For the purposes of Rule 23 class certification, plaintiffs bring only three.

First, plaintiffs allege that defendants' use of a tip credit to pay plaintiffs a subminimum wage was improper under NYLL § 652.4.  The NYLL allows for food service workers to earn a subminimum wage in the amount of "at least two-thirds of the minimum wage rates" otherwise applicable to the employee as long as that employee's tips "equal or exceed" the relevant minimum wage.  N.Y. Lab. Law § 652.4.

---

[5] Rule 23(c)(4) allows for a court to certify limited issues for class resolution if the case as a whole is not amenable to a class action.  *See In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 221-22 (2d Cir. 2006).  If plaintiffs fail to prove that class certification is appropriate for any of their claims, the Court will consider if individual issues would nevertheless be amenable to class consideration under this Rule.

But to claim the tip credit, an employer must also provide a written notice of "the amount of tip credit" the employer plans to take. *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 501 (S.D.N.Y. 2017). That notice must also apprise the employee that "extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate." *Id.*

Second, plaintiffs contend that defendants improperly retained a portion of the mandatory service charges applied to banquet customers' bills in violation of NYLL § 196-d. Under the NYLL, "no employer shall demand any part of the gratuities received by an employee, or retain any part of a gratuity." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 39 (E.D.N.Y. 2015) (cleaned up).[6]

Third, plaintiffs argue that defendants violated New York's Wage Theft Prevention Act ("WTPA") by failing to provide adequate wage notices to their employees. The WTPA obligates employers to give an employee a notice of their hourly wages, as well as any tip credit the employer plans to claim for them. 12 NYCRR § 146-2.2(a). That notice must also communicate to employees that they are entitled to extra pay if "tips are insufficient to bring

---

[6] Some courts in this Circuit have held that a violation of NYLL § 196-d will also automatically disentitle a defendant to a tip credit. *See, e.g.*, *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 290-91 (S.D.N.Y. 2011). Others have disagreed. *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 133 (S.D.N.Y. 2014) (interpreting NYLL § 196-d such that employer can still receive tip credit despite violation). Which side of the debate this Court will choose to follow is a merits question that does not need an answer at this time.

the employee up to the basic minimum hourly rate." *Id.*  The employer is then required to keep an acknowledgement of receipt of that notice signed by the employee for at least six years.  *Id.* § 146-2.2(c).  However, the Second Circuit has held that the WTPA does not apply retroactively, therefore it can only sustain claims arising on or after April 9, 2011.  *See Gold v. N.Y. Life Ins. Co.*, 730 F.3d 137, 143-44 (2d Cir. 2013).

### 1. **Rule 23(a)**

Having identified the claims that plaintiffs argue are entitled to class certification, the next step is to consider whether Rule 23(a) would permit that certification.  Rule 23(a) tasks a movant with establishing that her proposed class is numerous, that the class's claims turn on common issues of law or fact, that her claims are typical of the class, and that she and her counsel would adequately represent the class.  Additionally, any proposed class must be sufficiently ascertainable.

### a. **Numerosity**

The analysis begins with numerosity.  As its name suggests, numerosity asks whether the proposed class is "so numerous that joinder of all members is impracticable."  FED. R. CIV. P. 23(a)(1).  Numerosity is typically presumed if the class stretches to include forty members.  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Even so, the question of practicability turns on "all the circumstances surrounding a case, not on mere numbers." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). The relevant considerations include judicial economy, the geographical dispersion of class members, the financial resources of class members, and the ability of claimants to institute individual suits. *Id.*

Plaintiffs argue that numerosity should be presumed because their classes are each composed of at least twenty-five to thirty hourly banquet service workers and at least ten to fifteen restaurant service employees at the hotel. Dkt. 76-10, ¶¶ 5, 9. Defendants counter that the proposed class might be smaller than plaintiffs suggest because it must be comprised of those actually aggrieved by its purportedly illegal policies. *See Sheehan v. Purolator, Inc.*, 103 F.R.D. 641, 649 (E.D.N.Y. 1984). Alternatively, defendants argue that plaintiffs' numerosity arguments fail because only seven of forty-seven employees opted into this case after receiving a solicitation letter from plaintiffs' counsel.

Defendants are wrong on both counts. First, the requirement that there actually be an aggrieved class is more relevant to commonality and typicality than to numerosity. *See Attenborough v. Const. & Gen. Bldg. Laborers' Local 79*, 238 F.R.D. 82, 94-95 (S.D.N.Y. 2006) (scrutinizing plaintiff's proof of an aggrieved class in context of commonality and typicality rather than numerosity).

17

Second, although plaintiffs' counsel may have solicited many potential members of the class and received an unenthusiastic response, it does not follow that those potential class members who did not opt-in must be excluded from the numerosity analysis. *See Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 632 n.2 (S.D.N.Y. 2007) (holding that under Rule 23, "individuals are considered class members until they opt out of the suit[.]"). After all, that solicited hotel employees declined to join an individual suit does not necessarily mean that they would ask to be removed from a class action suit if one were formed.

In any case, even if the Court could assume that the potential plaintiffs' failure to join this case thus far would make them more likely to opt out if a class were certified, "the mere possibility that members of a potential class may choose to opt out in the future is not enough to preclude a finding of numerosity[.]" *MacNamara v. City of N.Y.*, 275 F.R.D. 125, 142 (S.D.N.Y. 2011).  Defendants' arguments must therefore be rejected.

The Court must note that the numerosity inquiry is not as clear-cut as plaintiffs claim.  Plaintiffs have aggregated the class size by combining the disparate subclasses into a single class for the purposes of determining numerosity.  Plaintiffs' method of counting the class is mistaken.  It is not the total size of the class that matters, but the size of each proposed subclass that

drives the numerosity inquiry.  *See MacNamara*, 275 F.R.D. at 143 (inquiring whether subclasses are sufficiently numerous).

Even taking a subclass-by-subclass view, the Court is satisfied that plaintiffs have established numerosity.  Plaintiffs estimate that during plaintiff Carollo's year-and-a-half tenure at the hotel, there were twenty-five to thirty hourly banquet service workers and at least ten to fifteen restaurant service employees.  Dkt. 76-10, ¶¶ 2, 5, 9.  Carollo also affirms that the hotel had a high rate of turnover during her employment.  *Id.* ¶ 9.

The high rate of turnover and Carollo's estimations of the employment numbers being well within the double digits suggest that plaintiffs' proposed subclasses will likely exceed the presumed numerosity cap of forty members. Dkt. 76-10, ¶¶ 5, 9.  The employment numbers also reached that sizeable tally during only a one-and-a-half year period, which is a small fraction of the relevant timeframe in this case of six years before the case's filing through final judgment.  *See id.* ¶¶ 2, 9 (describing high turnover during period between September 2013 through April 2015).

Additionally, the very nature of this case—an employer allegedly taking advantage of minimum-wage workers—also suggests that the proposed class may lack the financial capabilities to bring lawsuits individually.  *Robidoux*, 987 F.2d at 936.  Between the large number of potential plaintiffs and the substantial likelihood that that group would not be well-positioned to bring

their own independent suits, plaintiffs have satisfied the numerosity requirement of Rule 23(a)(1).

### b.  **Commonality**

Next, the Court considers the commonality of the proposed classes' claims under Rule 23(a)(2).  Commonality asks whether the class members "have suffered the same injury" which can be proven by a "common contention" that is "of such a nature that it is capable of classwide resolution." *Dukes*, 564 U.S. at 350, 353.

In short, commonality is met where the determination of a single issue will resolve that issue as to "the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.  Challenges to labor policies tend to be amenable to precisely this type of class-wide proof, and as a result "commonality is usually satisfied in wage cases where the plaintiffs allege that defendants had a common policy . . . of unlawful labor practices."[7] *Balverde v. Lunella Ristorante, Inc.*, 2017 WL 1954934, at *6 (S.D.N.Y. May 10, 2017).

---

[7] This same logic defeats defendants' earlier argument that plaintiffs have failed to identify an aggrieved class.  The requirement of proof of an aggrieved class comes from *General Telephone Company v. Falcon*, in which the Supreme Court held that a plaintiff claiming discrimination against an employer must prove that there is a class of people with a similar grievance in order to justify a class action.  457 U.S. 147, 157-58 (1982).  The rationale behind that holding was that a plaintiff could prove that she was discriminated against because of gender or race without proving that her discrimination came under a company-wide policy.  *Id.*  In this case, by contrast, plaintiffs have alleged a common policy that would inherently affect all employees.

Defendants have not provided a compelling reason for a ruling contrary to that general practice.  They cite to a number of cases denying class certification in the employment context, but those cases are all poor fits.

Each case defendants cite did raise a minimum wage or overtime pay objection, but each also required an individualized inquiry into the hours worked by each employee before the defendants in those cases could be found liable.  *See Ellersick v. Monro Muffler Brake, Inc.*, 2017 WL 1196474, at *5-7 (W.D.N.Y. Mar. 31, 2017) (denying class certification because individualized issues of FLSA exempt status defeated commonality); *Velazquez v. Digital Page, Inc.*, 303 F.R.D. 435, 441-43 (E.D.N.Y. 2014) (denying class certification because determining minimum wage violations under FLSA required individualized inquiry into exempt status and amount of commission earned); *Enriquez v. Cherry Hill Mkt. Corp.*, 993 F. Supp. 2d 229, 233-35 (E.D.N.Y. 2014) (denying class certification because individualized inquiries were needed to determine wage rates and hours worked of employees).

However plaintiffs have not moved for Rule 23 certification for any overtime claim.  Instead, plaintiffs argue that defendants cannot avail themselves of the tip credit to as required to pay a subminimum wage because they violate New York law through keeping a portion of the service charge and failing to provide an adequate wage notice.  According to plaintiffs, both policies are uniform and affect all hotel employees being paid

21

a subminimum wage.  If the policy permitting defendants to pay a subminimum wage to their employees were to be found unlawful, that wage would be unlawful for every employee earning it.

Additionally, plaintiffs argue that defendants' keeping any portion of the service charge at all was unlawful.  Similarly, if plaintiffs are correct, then defendants would be uniformly liable to every banquet server paid only a portion of the service charge under this policy.  In other words, a determination that either policy is unlawful would open defendants to liability from all class members in "one stroke."  *Dukes*, 564 U.S. at 350.

As for defendants' argument that plaintiffs' claims under NYLL § 195 cannot proceed in a class-action format because New York's class action mechanisms do not permit it, the less said about that argument the better for defendants' sake.  The Court need say no more than that Rule 23, not New York's procedural rules, govern whether a class action is permissible.  *See Shady Grove Orhopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 400-01 (2010) ("Rule 23 permits all class actions that meet its requirements, and a state cannot limit that permission . . . .").

Defendants' remaining commonality arguments go not to the commonality of the issues that plaintiffs' complaint raises, but instead to the merits of plaintiffs' underlying claims.  Those arguments need not be reached until and

unless defendants make a new motion for summary judgment at the close of discovery.

Accordingly, plaintiffs have established commonality. *See, e.g.*, *Balverde*, 2017 WL 1954934, at *6-7 (finding commonality met for subminimum wage payment claim under NYLL because plaintiffs' claims derived "from the same wage and hour policies").

### c. **Typicality**

Next, plaintiffs must prove that their claims are typical of those of the class. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Grp.*, 960 F.2d 285, 291 (2d Cir. 1992).

Defendants' only novel argument that plaintiffs' claims would not look like a typical class members' is that plaintiff Carollo made more than minimum wage during portions of her employment at the hotel. *See* Dkt. 70-2, p. 62 (wage records reflecting Carollo's wage at up to $11 per hour). That argument must also be rejected. As long as Carollo was paid a subminimum wage for some portion of her employment, she has a potentially viable claim. The same is true of the rest of the class. Defendants' records show that Carollo was paid a subminimum wage for at least portions of her time at the hotel. *Compare id.* at 63 (showing Carollo's wage being as low as $5 per hour

in 2014), *with* N.Y. LAB. LAW § 652 (imposing minimum wage of $8 per hour on and after December 31, 2014).  Her claims relating to hours worked under that wage are therefore typical of those of the class.

As a result, plaintiffs have demonstrated typicality because, much like the members of the proposed classes, they worked as banquet and restaurant service workers.  In those roles, plaintiffs would have been subjected to the same allegedly unlawful policies as any member of the proposed subclasses. Both plaintiffs' claims are typical.

### d. **Adequacy**

The fourth and final requirement of Rule 23(a) is adequacy.  "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).  A proposed class representative is adequate if she has "an interest in vigorously pursuing the claims of the class" and has "no interests antagonistic to the interests of other class members." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011).

Defendants begin by attacking plaintiffs' personal understandings of the claims presented in this case.  That argument misses the mark.  It is not plaintiffs but their counsel who would bear the responsibility of arguing for the interests of the class, and plaintiffs' counsel plainly understands the lay

of the legal land.  *See Jin v. Shangai Original, Inc.*, --- F.3d ---,

2021 WL 864711, (2d Cir. Mar. 9, 2021) (noting that "it is class counsel, not

the class representatives, who are truly litigating the class's claims" (internal

citations omitted)).

Defendants next argue that plaintiffs are untrustworthy because their

affidavits and deposition testimony run contrary to other record evidence.

However, courts in this Circuit hesitate to disqualify proposed leading class

members based only on inaccurate testimony.  *Lapin v. Goldman Sachs &*

*Co.*, 254 F.R.D. 168, 177-78 (S.D.N.Y. 2008) (collecting cases declining to

dismiss proposed lead plaintiffs as inadequate based on inconsistent

testimony).  Instead, courts in this Circuit will typically only find adequacy

lacking if "attacks on the credibility of the representative party are so sharp

as to jeopardize the interests of absent class members."  *Id.* at 177.

The inconsistencies defendants point to amounted to plaintiff Owens

admitting at deposition that some of her responses to initial interrogatories

were inaccurate when confronted with documentary evidence to the contrary.

Those inconsistencies offer a less-than-robust attack on Owens' credibility,

and one not sharp enough to sever her as a class plaintiff.

Finally, defendants' objection that Carollo was a manager for part of her

employment at the hotel does not defeat her adequacy as a representative.  In

support of this argument, defendants rely on *Roach v. T.L. Cannon Corp.*

2013 WL 1316452, at *4 (N.D.N.Y. Mar. 29, 2013), *rev'd*, 778 F.3d at 409. There, the court noted that a proposed class plaintiff was inadequate because as a manager he would potentially share in the defendant company's liability. *Id.* But *Roach* was reversed on appeal, leaving it with precious little persuasive weight. *Roach*, 778 F.3d at 409.

But that weight is diminished even further because it does not overlap meaningfully with the facts in this case. 2013 WL 1316452, at *4. Unlike in *Roach*, there is no evidence in the record that Carollo could be held individually liable for any of plaintiffs' claims, which was essential to the *Roach* court's finding of inadequacy. *Id.* (noting defendants argued proposed class plaintiffs could not serve as representatives because they could be held individually liable as employers for its alleged violations). In the absence of the possibility of Carollo being individually liable, the disqualifying characteristic identified in *Roach* does not apply to these facts.

As a consequence, there is no indication that her interests are in any way antagonistic to those of the purported class. *In re Literary Works*, 654 F.3d at 249. Plaintiffs Carollo and Owens are adequate lead plaintiffs.

But defendants also challenge the adequacy of plaintiffs' counsel. To that end, a court certifying a class must appoint class counsel. FED. R. CIV. P. 23(g)(1). In appointing class counsel, a court must consider: (1) the work counsel has done in identifying or investigating potential claims;

26

(2) counsel's experience in handling complex litigation, but especially class actions and the types of claims relevant to the case; (3) counsel's knowledge of the applicable law; and (4) the resources counsel is prepared to commit to the class. *Id.* at 23(g)(1)(A). Defendants have not raised any concerns with these four categories, nor can the Court find any failing on plaintiffs' counsel's part.

But that is not to say that defendants do not object to plaintiffs' counsel serving as a potential class counsel. Instead, defendants argue that plaintiffs' counsel does not afford adequate representation because of their aggressive solicitation of hotel employees as clients. In fact, defendants moved to disqualify plaintiffs' counsel for that exact alleged infraction. Dkt. 63.

It is true that a court must consider whether class counsel demonstrates any conflicts of interest that might impair its representation. *Seijas v. Republic of Argentina*, 606 F.3d 53, 57 (2d Cir. 2010). But it does not follow from that proposition that a purported instance of misbehavior automatically disqualifies class counsel. *Cf. id.* (permitting class to move forward even where class counsel represented competing claims that might create difficulties in assessing damages).

In any case, Magistrate Judge Dancks denied defendants' motion to remove plaintiffs' counsel as unsupported by the record. Dkt. 85. The Court finds no fault in magistrate Judge Dancks's analysis, nor have plaintiffs'

counsel provided any reason to doubt their commitment or effectiveness over the course of the present motion practice.  In the absence of any other indication that plaintiffs' counsel has a conflict of interest to the proposed class, their representation would be adequate.  *Seijas*, 606 F.3d at 57.

### e. Ascertainability

The Court also notes that plaintiffs' proposed classes pass the implied ascertainability requirement that courts have grafted onto Rule 23(a).  To be ascertainable, a class must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."  *In re Petrobras Sec.*, 862 F.3d at 260.  Contrary to defendants' arguments that the proposed class included all of the hotel's hourly employees and thus cannot be ascertainable, plaintiffs have provided four readily identifiable subclasses.

Those subclasses were discussed above, and each allows for a straightforward determination by the Court as to whether an employee fits any or all of those classes.  Functionally, any proposed class member who worked as a banquet service worker would fall into the Unpaid Gratuity Subclass, because plaintiffs allege that defendants uniformly failed to pay the entire service charge to their banquet workers.  Any hotel employee who can establish that she worked a banquet can prove her membership to this subclass easily enough.

Along the same lines, any banquet service workers who can prove a subminimum wage on any paystub would readily fall under the Banquet Service Subminimum Wage Subclass. Obviously, the same holds true for the Hourly Tipped Restaurant Service Subminimum Wage Subclass.

The only subclass that might be difficult to ascertain would be the Wage Theft Prevention Act Subclass, which would require some indication that the individual class member had not received a proper written wage notice. However, defendants are required under New York law to keep records of these notices for at least six years. 12 NYCRR § 146-2.2(c). Any employee for whom defendants did not maintain that signed receipt since 2011 would thus presumably fall into that subclass.[8] As a result, there would be minimal difficulty in determining whether defendants' former employees fell into any of the proposed subclasses. *In re Petrobras Sec.*, 862 F.3d at 260.

Accordingly, plaintiffs have adequately proven that their claims meet each of the four requirements of Rule 23(a), and the implied requirement of ascertainability besides.

---

[8] In the event that defendants have destroyed some of those receipts while the motions under consideration were pending but after the requisite six-year period had lapsed, an affidavit from the proposed class member claiming not to have received such a notice would also make the decision as to whether he or she qualifies for this subclass relatively straightforward.

## 2. **Rule 23(b)(1)(A)**

But even though plaintiffs have satisfied Rule 23(a)'s universal class action requirements, plaintiffs must still prove that their claims fit at least one form of class action allowed under Rule 23(b).  Plaintiffs first argue that Rule 23(b)(1)(A) offers a path to class certification.  That Rule allows a plaintiff to certify a class if separate actions by individual class members would risk "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class[.]"  FED. R. CIV. P. 23(b)(1)(A).

But as many observers have pointed out, "inconsistent verdicts on liability or damages do not alone give rise to incompatible standards of conduct[.]"  7 William B. Rubenstein, *Newberg on Class Actions* § 23:27 (5th ed. 2020).  It is not hard to see why this rule exists.  In its absence, any circumstance in which a defendant's course of action could have harmed multiple plaintiffs would be entitled to class certification under Rule 23(b)(1)(A) as a matter of course.  *See Petrolito v. Arrow Fin. Servs., LLC*, 221 F.R.D. 303, 313 (D. Conn. 2004) ("[I]f compensatory damage actions can be certified under Rule 23(b)(1)(A), then all actions could be certified under the section, . . . making the other sub-sections of Rule 23 meaningless, particularly Rule 23(b)(3)).

30

Instead, the paradigmatic case for granting class certification under Rule 23(b)(1)(A) is one arising under ERISA, in which even compensatory damages claims would ultimately go to the ERISA plan, not to any individual plaintiff. Rubenstein, *supra* at § 23:27.  As a result, the claims seeking compensatory damages that get certified under Rule 23(b)(1)(A) typically come under ERISA.  *Id.*

As should be clear by now, plaintiffs do not bring an ERISA claim.  And although plaintiffs do make a request for injunctive relief in the form of compelling defendants to cease their allegedly illegal employment practices, that injunctive relief arrives with a claim for damages in tow.  Neither point bodes well for plaintiffs' hopes of certifying a Rule 23(b)(1)(A) class action.  To the extent that plaintiffs rely on Rule 23(b)(1)(A) to certify their class, that motion must be denied.

### 3. **Rule 23(b)(3)**

However, Rule 23(b)(3) offers plaintiffs a second bite at the apple. Certification of a class under Rule 23(b)(3) comes into play when (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).  These two elements are commonly called the predominance and superiority inquiries.

31

At its core, "[t]he predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).  That test amounts to an inquiry into "whether the common, aggregation-enabling[ ] issues in the case are more prevalent or important than the non-common, aggregation-defeating[ ] individual issues." *Id.*

If "one or more" common issues are so central to the disposition of the case as to predominate over it, Rule 23(b)(3) will permit the case to come as a class action.  *Tyson*, 136 S. Ct. at 1045.  Importantly, "the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification under Rule 23(b)(3)."  *Roach*, 778 F.3d at 405 (2d Cir. 2015) (internal quotation marks omitted); *see Tyson*, 136 S. Ct. at 1045 (noting that Rule 23(b)(3) allows for class action "even though other important matters will have to be tried separately, such as damages").

Defendants argue that individual issues will predominate in this case, but they fail to clarify precisely how.  Defendants rely on *Alix v. Wal-Mart Stores, Inc.*, a New York case that applies state law rather than Rule 23. 868 N.Y.S.2d 372, 375-76 (Sup. Ct. App. Div. 3d Dep't 2008).  To defendants' credit, they recognize that Ney York presents a different standard, but argue that *Alix* is nevertheless sufficiently analogous to this case to be of use.  *Id.* The problem with defendants' argument is that even if the Court assumes

32

that the facial similarities between the federal and New York class action mechanisms run deep enough to make the state court's analysis useful, the facts of *Alix* are completely inapposite. *Id.*

*Alix* involved a straightforward overtime claim. 868 N.Y.S.2d at 375-76. The plaintiffs argued that the defendants instilled a culture that pressured employees to work overtime without pay. *Id.* To establish liability on that claim, any individual plaintiff would have to come forward with evidence that they worked overtime but were not paid for it. *See id.* The state court concluded that the common question of whether the defendants created a culture that tacitly required overtime would not answer whether they were liable to any individual plaintiff. *Id.* Even assuming the plaintiffs proved that the alleged culture existed, individualized questions of whether each plaintiff in fact worked overtime would need to be answered before the defendants could be held liable. *Id.* The state court reasonably determined that those individualized questions predominated, not the common question of its defendants' workplace culture. *Id.*

By contrast, in this case plaintiffs' claims live or die by the common question of whether defendants' policies regarding their tip credit, the banquet service charges, or wage notices violated NYLL. An affirmative answer to any of those common questions settles defendants' liability to all plaintiffs in the relevant subclass at once. The only individualized questions

left behind would be the amount of damages owed to each plaintiff, which is not enough to defeat a finding of predominance. *See Roach*, 778 F.3d at 405 (noting that "the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification"). As a result, the common issues of the legality of defendants' tip credit, service charge, and wage notice policies predominate over any individualized issues.

The last obstacle separating plaintiffs from class certification is superiority. Rule 23 provides a list of factors for courts to weigh in evaluating the superiority of a class action format, including (1) the class members' interests in individual control over their claims; (2) the extent and nature of previously existing litigation by and against the class members; (3) the desirability of concentrating the litigation in one forum; and (4) the likely difficulties in managing a class action. FED. R. CIV. P. 23(b)(3)(A-D).

Defendants raise three objections to a finding of superiority. First, they argue that resolving this case would involve numerous individualized inquiries for every potential class member. This argument is basically just a rehash of defendants' predominance arguments and must be rejected for the same reasons outlined above.

Second, defendants argue that it is unlikely that there would be numerous individual actions in the absence of class certification because of the tepid response to plaintiffs' counsel's solicitation efforts thus far. This argument

must also be rejected.  Once again, just because a potential class member does not want to involve themselves at present does not mean that they would not be willing to participate once a class action is formed.

Third and finally, defendants dispute plaintiffs' contentions that the damages for each potential class plaintiff's claims would be so insignificant as to discourage them from pursuing an individual action.  As evidence, defendants point to plaintiffs' responses to their interrogatories.  But at most, those responses only provide rough calculations of damages and note that WTPA caps liquidated damages at $5,000.  *See, e.g.*, Dkt. 69-12, ¶ 4.

However, it must be said that one opt-in plaintiff estimates her damages to be $25,638.74 for her subminimum wage claim, $67,381.40 for her improper gratuity retention claim, and $5,000 for her WTPA claim.  Dkt. 69-8, ¶ 4.  Assuming that those damages can all be awarded together without running into problems of duplicative awards, $100,000 is not so insubstantial a sum as to deter a plaintiff from bringing an individual suit.  *Id.*

Yet plaintiffs have satisfied superiority nonetheless.  The convenience of concentrating all claims against the hotel in its own city cannot be overstated.  FED. R. CIV. P. 23(b)(3)(C).  The proposed classes, though numerous enough to justify a class action format, are not so numerous that they would make managing a class action unwieldy.  *Id.* at 23(b)(3)(D).  There

is also no indication of any ongoing litigation of this issue other than this case, indicating that there is no great interest in plaintiffs' ability to individually control their claims. *Id.* at 23(b)(3)(A-B). By extension, a class action is the superior method of litigating plaintiffs' claims.

In sum, plaintiffs have adequately proven every element class certification that Rule 23(b)(3) requires. The Court therefore certifies this case as a class action and certifies each of the four subclasses plaintiffs have identified.[9] *See, e.g.*, *Balverde*, 2017 WL 1954934, at *1, 4-10 (certifying Unpaid Wage Class under Rule 23(b)(3) for all hourly employees of defendants within NYLL statutory timeframe for improperly withheld gratuities and improper minimum wage and overtime pay).

## C. <u>FLSA Certification</u>

Having established a grouping mechanism for resolving plaintiffs' state law claims, the question becomes whether plaintiffs' federal claims deserve the same treatment under FLSA. In considering an initial motion for certification under FLSA § 216, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (citation omitted). Instead, the question is only whether

---

[9] Because class certification is proper under Rule 23(b)(3) for all of plaintiffs' state law claims, the Court need not consider plaintiffs' arguments that they are entitled to class certification for individual issues under Rule 23(c)(4).

the available evidence demonstrates that the plaintiffs and putative class members are similarly situated. *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012) (citation omitted).

The Second Circuit recently defined the term "similarly situated" in the § 216 context in *Scott*.[10]  954 F.3d 502.  By *Scott*'s rubric, "party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their claims." *Id.* at 516.  Quite unlike the Rule 23 standard, "dissimilarities in other respects should not defeat collective treatment." *Id.*

Plaintiffs have only moved for initial certification under FLSA, and thus the Court should properly consider plaintiffs' motion under the relatively lax step one inquiry.  After all, courts in this Circuit still employ step one even if some discovery has been completed. *See, e.g.*, *Jibowu v. Target Corp.*, --- F. Supp. 3d ---, 2020 WL 5820957, at *20 (E.D.N.Y. Sept. 30, 2020) (collecting cases).  But some courts have applied heightened expectations for a plaintiff's evidentiary showing if the completed discovery is substantial. *Id.*

---

[10] *Scott* was an appeal considering a decertification of a FLSA class under the second step of § 216 analysis.  954 F.3d at 515.  As a result, the Second Circuit's decision focused "particularly" on step two, but the Circuit's definition of the term "similarly situated" is relevant for either step in the analysis. *See id.* (noting that Second Circuit has "said little regarding what it means to be 'similarly situated' and how district courts should analyze whether named and party plaintiffs are so situated, particularly at [s]tep [t]wo" then proceeding to clarify "similarly situated" standard).

This "modest-plus" standard, as courts have taken to calling it, will consider opposing materials in addition to the movants' pleadings and documents. *Gaston v. Valley Nat'l Bancorp*, 2018 WL 4158407, at *2 (E.D.N.Y. Aug. 30, 2018).  However, even under the modest-plus rubric, courts do not weigh the merits of the underlying claims. *Julian v. MetLife, Inc.*, 298 F. Supp. 3d 699, 703 (S.D.N.Y. 2018).  Plaintiffs have met their burden under either the modest or the modest-plus standard.

Essentially, plaintiffs argue that defendants violated FLSA in three ways, each amenable to collective proof.  First, plaintiffs argue that defendants' uniform policy of paying a subminimum wage to all banquet service workers while relying on the service charge to satisfy FLSA improperly deprived all potential opt-in plaintiffs of an appropriate wage.

Plaintiffs argue that under federal law a service charge cannot count toward tips received by an employee to bring their wages to or above the minimum wage requirement.  29 C.F.R. § 531.55(a) ("A compulsory charge for service . . . is not a tip and, even if distributed by the employer to its employees, cannot be counted as a tip received in applying [a tip credit].").  To plaintiffs' mind, then, defendants' policy of paying the banquet service workers a subminimum wage while relying on the service charge to bring their wages above the minimum is unlawful.  Plaintiffs provide several affidavits to establish that this policy was common, or uniform.  *See, e.g.*,

Dkt. 71-3, ¶ 6.  They have also submitted to the court a spreadsheet of many employees' subminimum wages as calculated by defendants to bolster their evidentiary showing.  Dkt. 71-8.

At stage one, the Court is satisfied by plaintiffs' showing that the potential opt-in plaintiffs they identify are similarly situated.  If defendants' policy of relying on the service charge to pay their employees a subminimum wage is unlawful, each of those employees would share a common issue of fact and law dispositive to their claims, making them all similarly situated.  *Scott*, 954 F.3d at 516.  Section 216 does not require plaintiffs to go any further at this stage.  *Id.*

Defendants' counterarguments come in three forms, each equally unavailing.  Defendants first argue that their conduct was legal because FLSA still allows an employer to supplement a subminimum wage with a service charge without violating the minimum wage requirements, as long as the employer lists that service charge as part of its gross receipts.  *See Hart v. Rick's Cabaret Int'l, Inc.*, 60 F. Supp. 3d 447, 455 (S.D.N.Y. 2014) (noting that service charge may only be applied against minimum wage obligations if included as gross receipts).  But that argument goes to the merits of plaintiffs' claims, which the Court cannot consider at step one.  *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 482 (S.D.N.Y. 2016) (refusing to consider merits at step one).  As a consequence, the Court must reject this argument.

Defendants' second argument is that individualized proof would be required to address plaintiffs' claims of an inappropriate wage calculation for overtime under FLSA.  The Court considered that argument in its Rule 23 analysis above, but it is of no moment in considering a motion for initial certification under FLSA.  *Scott*, 954 F.3d at 516 (noting that "dissimilarities. . . should not defeat collective treatment").  In the absence of any meritorious argument from defendants as to why plaintiffs' showing is inadequate, plaintiffs have proven entitlement to preliminary certification on the subset of their claims alleging that defendants improperly paid them a subminimum wage in violation of FLSA.

But plaintiffs also bring two more categories of FLSA claims.  For their second, plaintiffs argue that defendants improperly calculated their wages in determining their overtime pay rates.  As evidence, plaintiffs point to defendants' response to their interrogatories, in which defendants admitted that they calculated the banquet service workers' pay rates at one-and-a-half times the minimum wage.  Dkt. 71-7, ¶ 7.  Though this pay rate seems perfectly adequate on its face, defendants continued to note that their calculation of an employee's wage did not include any payment the employees earned through the banquet service charge.  *Id.*  Perhaps unsurprisingly, plaintiffs argue that defendants' wage calculation is unlawful because

plaintiffs believe they are entitled to have the banquet service charge considered in determining their pay rates for overtime as well.

Whether defendants' uniform wage calculation policy is appropriate is a question common to each potential opt-in plaintiff. This common question makes those potential opt-in plaintiffs similarly situated under *Scott*. 954 F.3d at 516.

Once again, defendants' argument goes to the merits of plaintiffs' claims by objecting that a service charge constitutes a "commission," and that as a result the banquet service workers are exempt from the FLSA provision upon which this claim relies. The Court could not consider defendants' arguments on the merits before, nor can it now. *See Korenblum*, 195 F. Supp. 3d at 482.

Similarly, defendants again invoke potential individualized issues as a talisman to prevent certification under FLSA. The Court must, again, reject those arguments as improper under *Scott*. *Scott*, 954 F.3d at 516 (holding that where common issues exist "dissimilarities in other respects should not defeat collective treatment"). Plaintiffs have therefore met their burden of establishing entitlement to certification under § 216 of FLSA for the subset of claims that allege defendants improperly calculated their overtime wages as well.

For plaintiffs' third and final subset of FLSA claims, they argue that defendants failed to provide them notice that they would pay a tip credit

wage, despite FLSA's requirement that they do so.  *See generally* Dkt. 71-9, *passim* (providing defendants' pay rate notices to employees which do not include any tip credit); *see also* 29 U.S.C. § 203(m)(2)(A) (requiring notice to employee as to how tip credit works before employer can claim tip credit).

Plaintiffs have furnished their wage notices, which curiously do not indicate that defendants took a tip credit.  Dkt. 71-9, *passim*.  This omission is puzzling, and smacks of the possibility that hotel employees were not informed about the tip credit by any other means permitted by FLSA, either. Moreover, because plaintiffs supplied wage notices with similar omissions for multiple employees, plaintiffs have produced at least some evidence that all hotel employees may be similarly situated as to the inadequacy of the notice of defendants' taking a tip credit.  29 U.S.C. § 203(m)(2)(A).

Defendants' counterarguments once again carry little weight.  For a third time, they argue both that plaintiffs' claims are meritless and that any potentially similarly situated plaintiffs would still need to establish several highly-individualized issues.  For a third time, the Court rejects those arguments as irrelevant to the FLSA collective action inquiry.  Plaintiffs have met their burden under either the modest or modest-plus rubrics for their third and final claim of a FLSA collective action, and their lack-of-notice

claims may proceed as a collective as well.[11]  *See, e.g., Balverde v. Lunella Ristorante, Inc.*, 2016 WL 2757430, at *3-4 (S.D.N.Y. May 11, 2016) (approving FLSA collective action for employees claiming improper use of tip pool and improper overtime payments for restaurant servers).

Defendants do, however, raise one final attack on plaintiffs' motion for a FLSA collective that bears at least some discussion.  Defendants argue that plaintiffs failed to provide affidavits from other potential employees to prove that there are other opt-in employees.  This argument, too, must be rejected.  As plaintiffs correctly point out, the "similarly situated" inquiry does not require proof by affidavit that there are opt-in plaintiffs raring to join the litigation.  *See Zhang v. Ichiban Grp., LLC*, 2020 WL 1030651, at *3 (N.D.N.Y. Mar. 3, 2020) ("Plaintiffs may satisfy this requirement by relying on *their own* pleadings, affidavits, declarations, *or* the affidavits and declarations of other potential class members." (emphasis added)).

Instead, it is enough that plaintiffs have provided evidence of a broad policy that would apply—allegedly unlawfully—to all employees.  *Cf. Balverde*, 2016 WL 2757430, at *3 (noting that plaintiff's affidavit claiming that coworkers were subjected to same practices meets step one burden).

---

[11] Because plaintiffs have met both the modest and the modest-plus burden for each of their three collective FLSA claims, the Court takes no hard stance as to which burden properly applied in this case.

Plaintiffs have satisfied the step one inquiry for conditional certification of a collective under FLSA.  Their motion must be granted.

### D. <u>Adequacy of Plaintiffs' Proposed Notice</u>

The final issue raised by the parties' motion practice is the propriety of plaintiffs' proposed notices for both its FLSA collective action and its Rule 23(b)(3) class action.

### 1. <u>Rule 23 Notice</u>

Defendants raise four objections to plaintiffs' proposed notice to the Rule 23 class.  First, defendants argue that it is inappropriate to send the notice to all hourly employees of the hotel, because plaintiffs' claims are limited to banquet service workers and restaurant workers.  The problem with defendants' argument on this point is that the Wage Theft Prevention Act Subclass properly includes all hourly hotel workers.  As a result, a notice to any subset of the hotel's former employees smaller than all hourly workers would miss some members of this subclass.  But defendants do raise a valid point that the WTPA only took effect in April of 2011 and does not apply retroactively.  *Gold*, 730 F.3d at 143-44.  Accordingly, the notice to all hourly workers should be limited to those employed since April 9, 2011.  The January 5, 2010 date would still properly apply to all hourly banquet and restaurant service workers.

Second, defendants object that plaintiffs do not provide an opt-out form with their notice. Nevertheless, the Court is satisfied with plaintiffs' description of the opt-out process, and defendants' objection is denied.

Third, defendants contend that it is unnecessary to require that the notice be posted at the hotel. To defendants' point, some courts have not required posting at a restaurant until other means of communication have proven ineffective. *See, e.g.*, *PAL v. Sandal Wood Bar N Grill*, 2015 WL 237226, at *3 (S.D.N.Y. Jan. 15, 2015).

But it must be said that several other courts have come to the opposite conclusion. *See Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011) (collecting cases for proposition that "[c]ourts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail"). Given the ambivalence of the case law, the Court would prefer to err on the side of more effective notice. Defendants' objection must be rejected.

Fourth and finally, defendants complain that it is improper for the notice to point potential class members directly to plaintiffs' counsel's website. Because plaintiffs' counsel will be lead counsel for the class action in any case, the Court does not share defendants' concern. Plaintiffs' counsel will have an active hand in the outcome of this case regardless of whether a class

45

member chooses to employ them or not.  By extension, being able to size

plaintiffs' counsel up early on would only inure to the benefit of a class

member in deciding how they would like to proceed with their own claims.

Accordingly, defendants' fourth objection to plaintiffs' Rule 23 notice must be

rejected.

Summing up, defendants' only meritorious objection to the Rule 23 notice

is that the appropriate timeframe for providing notice to all hourly workers

must be capped at April 9, 2011.  In all other respects, plaintiffs may provide

their supplied notice to the class through the mechanisms they suggest.

### 2. **FLSA Notice**

As for plaintiffs' proposed notice to the potential FLSA opt-in plaintiffs,

defendants raise no fewer than nine objections.  First, defendants argue that

the FLSA notice must be limited to those employees working at the hotel

within the three years preceding this Memorandum-Decision and Order,

rather than three years before this case was filed.  Yet as plaintiffs correctly

counter, the "routine practice within this Circuit" is to provide notice to

workers "who were employed within three years prior" to plaintiffs' filing

suit.  *See, e.g.*, *Hinckley v. Seagate Hosp. Grp., LLC*, 2016 WL 6524314, at *16

(W.D.N.Y. Nov. 3, 2016) (collecting cases).  Consequently, defendants'

objection is meritless.

Second, defendants object to plaintiffs' request for a ninety-day opt-in period for the FLSA collective action, and instead submit that a forty-five-day period is more appropriate.  Both parties ask for too much.  "[A sixty-]day notice period for potential plaintiffs is common practice under . . . FLSA." *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 76 (E.D.N.Y. 2016).  The Court sees no reason to deviate from that typical practice in this case, and the notice will therefore give any opt-ins sixty days to join.

The remaining seven nits defendants pick with the notice range from a request to insert defendants' counsel's contact information in the notice to fleshing out how litigation works more explicitly.  The Court has reviewed these objections and is unpersuaded.  In all respects other than the ninety-day notice period being reduced to sixty days, plaintiffs' proposed notice must remain the same.

## V. CONCLUSION

The more complex and nuanced the area of law, the easier it becomes for blanket policies to get caught on one regulation or another.  Labor law is a thicket with more than enough thorns to snag an unwary employer, and if the unlawful policy the employer adheres to is broad enough, any number of employees can have cause to object.  Plaintiffs have done their part to prove that defendants' policies reach far enough to catch a class of plaintiffs under

both Rule 23 and FLSA.  Plaintiffs are thus entitled to certification of a class under the former, and a collective action under the latter.

Therefore, it is

ORDERED that

1. Defendants' motion for summary judgment is DENIED under Federal Rule of Civil Procedure 56(d).  They may renew that motion at the close of merits discovery;

2. Plaintiffs' motion for certification of this case as a class action under Federal Rule of Civil Procedure 23(b)(3) is GRANTED;

3. The Court certifies plaintiffs' NYLL claims under Counts:

   (III) unlawful retention of gratuities; (IV) unpaid minimum wages; and (V) wage notice violations as a Rule 23(b)(3) class action on behalf of a class defined as "all hourly employees of the Radisson Hotel-Utica Centre at any time from April 9, 2011 through the present and all banquet and restaurant service workers who worked for the Radisson Hotel-Utica Centre at any time from January 5, 2010 through the present";

4. The Court appoints Named Plaintiffs Deanna Carollo and Diana J. Owens as class plaintiffs and the Thomas, Solomon Law Firm as class counsel;

5.  Plaintiffs' proposed class notice is approved, provided it is modified to only reach all hourly workers employed at the Radisson Hotel-Utica Centre at any time from April 9, 2011 through the present, though all hourly banquet service workers and restaurant service workers between January 5, 2010 and the present may still receive notice;

6.  Plaintiffs' Motion for Certification of a Collective Action under FLSA § 216 is GRANTED;

7.  The Court orders conditional certification of a FLSA collective of all hourly banquet and restaurant service workers employed at the Radisson Hotel-Utica Centre at any time from January 5, 2013 through the present for plaintiffs' claims under Counts: (I) unpaid minimum wages; and (II) unpaid overtime wages.  Plaintiffs' proposed notice is approved, provided it is modified to limit the opt-in period to sixty days; and

8.   Defendants are ordered to produce to plaintiffs a list of the names and last-known mailing and email addresses of all employees falling into the classes described above no later than Tuesday, April 13, 2021.

IT IS SO ORDERED.

Dated:  March 24, 2021
      Utica, New York.

David N. Hurd
U.S. District Judge

49