**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **DEANNA CAROLLO and DIANA J. OWENS,** *on behalf of themselves and all other employees similarly situated,*<br><br>                                                 *Plaintiffs,*<br><br>      **v.**<br><br>**UNITED CAPITAL CORP., AFP MANAGEMENT CORP. and AFP 101 CORP.,**<br><br>                                               *Defendants.* | **Civil Action No.**<br>**16-cv-0013-DNH-TWD** |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS CLAIMS OF ABSENT CLASS MEMBERS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ iii

PRELIMINARY STATEMENT ................................................................................................. 1

FACTS ........................................................................................................................................ 2

ANALYSIS ................................................................................................................................. 5

   I.   Legal Standards .................................................................................................................. 5

   II.  Rule 23 Grants The Court Wide Discretion To Oversee The Class, And to Invalidate the
Agreements ............................................................................................................................... 7

ARGUMENT .............................................................................................................................. 9

   I.   Defendants Waived Their Opportunity To Seek Arbitration By Waiting Six Years After
Commencement Of The Action .............................................................................................. 10

   II.  Even Before *Morgan*, Defendants Would Still Have Waived Their Ability To Seek
Dismissal of Employees ......................................................................................................... 11

      A.  The Amount of Time Elapsed Between Commencement of the Case and When
Defendants Sought Arbitration Weighs in Favor of Waiver ................................................. 12

      B.  Substantive Litigation Has Taken Place, Thus Defendants Waived their Ability to Seek
to Dismiss Employees. ........................................................................................................... 13

      C.  Plaintiffs Would Be Prejudiced If This Court Compels Arbitration ............................. 16

   III.  Even if the Court Does Not Find Waiver, the Agreements Should Not Be Enforced ... 18

      A.  Defendants Forced Employees Into the Agreements After the Case Was Filed ........... 18

      B.  Defendants Failed to Disclose the Existence of the Pending Class Action .................. 19

      C.  Defendants Failed to Provide Class Counsel's Contact Information or a Summary of the
Allegations ............................................................................................................................. 22

      D.  The Arbitration Agreements Are the Product of Improper Communications with
Putative Class Members ......................................................................................................... 23

      E.  The Terms of the Agreement Itself Render It Unenforceable As Substantively
Unconscionable ...................................................................................................................... 25

CONCLUSION.......................................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*B & R Supermarket, Inc. Visa Inc.*, No. 17-CV-02738, 2021 WL 4408167
(E.D.N.Y. Sept. 27, 2021)........................................................................................... 12
*Balasanyan v. Nordstrom, Inc.,* No. 11-2609, 2012 U.S. Dist. LEXIS 30809
(S.D. Cal. Mar. 8, 2012).............................................................................................. 24
*Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914 (11th Cir. 2014) ............................... 24
*Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377 (S.D.N.Y. 2002)............................7, 22, 23
*Brower v. Gateway 2000*, 246 A.D.2d 246 (1st Dept. 1998)............................................ 8
*Burford v. Cargill, Inc.*, No. 05-CV-283, 2007 WL 81667 (W.D. La. Jan. 9, 2007) .................. 23
*Butto v. Collecto Inc.*, 845 F.Supp.2d 491 (E.D.N.Y. 2012) ........................................... 6
*Camp v. Alexander*, 300 F.R.D. 617 (N.D. Cal. 2014)...................................................... 23
*Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co., Ltd.,* 189 F.3d 289 (2d Cir. 1999). 6
*Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216 (S.D.N.Y. 2020) .......................... 12
*Cheverez v. Plains All Am. Pipeline, L.P.*, 15-4113, 2016 U.S. Dist. LEXIS 27818
(C.D. Cal. Mar. 3, 2016)............................................................................................... 24
*Cnty. of Santa Clara v. Astra USA, Inc.*, No. 05-3740, , 2010 U.S. Dist. LEXIS 78312
(N.D. Cal. July 8, 2010)................................................................................................ 24
*Cnty. of Santa Clara v. Astra USA, Inc.*, No. 05-3740, , 2010 WL 2724512
(N.D. Cal. July 8, 2010)................................................................................................ 23
*Commercial Lubricants, LLC v. Safety-Kleen Systems, Inc.,* 14 Civ. 7483, 2018 U.S. Dist.
LEXIS 1786499 (E.D.N.Y. Oct. 17, 2018)...................................................................... 13
*Com-Tech Assoc. v. Computer Assoc. Intern*, 938 F.2d 1574 (2d Cir. 1991)............................. 14
*Cotton v. Slone*, 4 F.3d 176 (2d Cir. 1993); *Doctor's Assoc., Inc. v. Distajo*, 66 F.3d 438 (2d Cir.
1995) ........................................................................................................................ 14
*De Sapio v. Kohlmeyer*, 35 NY.2d 402 (1974) ................................................................. 14
*DeGidio v. Crazy Horse Saloon & Restaurant, Inc.*, No. 13-2136, 2 2017 U.S. Dist. LEXIS
219018 (D.S.C. 2017) ................................................................................................... 24
*Doe v. Trump Corp.*, 453 F.Supp.3d 634 (S.D.N.Y. 2020), *aff'd*, 6 F.4th 400 (2d Cir. 2021)..... 12
*Edwards v. First Am. Corp.*, 289 F.R.D. 296 (C.D. Cal. 2012).......................................... 15
*Eisen v. Venulum Ltd.*, 244 F.Supp.3d 324 (W.D.N.Y. 2017).............................................. 7
*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938 (1995)................................................ 6
*Forest Park Pictures v. Universal Television Network, Inc.,* 683 F.3d 424 (2d. Cir. 2012) ......... 6
*Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.,* 764 F.3d 210 (2d Cir. 2014)............ 6
*Gonzalez v. Preferred Freezer Servs. LBF, LLC*, 2012 U.S. Dist. LEXIS 139764
(C.D. Cal. Sep. 27, 2012)............................................................................................. 20
*Griffin v. Aldi, Inc.*, No. 16-CV-0354, 2017 WL 1957021 (N.D.N.Y. May 11, 2017) .............. 23
*Hampton Hardware, Inc. v. Cotter Co., Inc.*, 156 F.R.D. 630 (N.D. Tex. 1994)....................... 18
*Healy v. Cox Commc'ns, Inc.*, 790 F.3d (10th Cir. 2015) ................................................. 15
*Hinds Cnty. v. Wachovia Bank, N.A.*, 790 F. Supp. 2d 125 (S.D.N.Y. 2011) ......................... 9
*In re Citigroup, Inc.*, 376 F.3d ................................................................................... 15
*In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555 (S.D.N.Y. 2004) ....... 8, 9, 18, 20
*In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237 (S.D.N.Y. 2005)............. 24
*In re Sch. Asbestos Litig.*, 842 F.2d 671 (3d Cir. 1988)...................................................... 9
*Jimenez v. Menzies Aviation, Inc.*, No. 15-2392, 2015 U.S. Dist. LEXIS 108223

(N.D. Cal. Aug. 17, 2015) ............................................................................................ 24

*Kahn Lucas Lancaster, Inc. v. Lark Intern. Ltd.*, 186 F.3d 210 (2d Cir. 1999) ............................. 21

*Kleiner v. First Nat'l Bank*, 751 F.2d 1193 (11th Cir. 1985) ................................................. 9, 25

*Kramer v. Hammond,* 943 F.2d 176 (2d Cir. 1991) ............................................................... 13

*Long v. Fidelity Water Sys., Inc.*, 2000 WL 989914 (N.D.Cal. May 26, 2000) ........................... 18

*Manigault v. Macy's E., LLC*, 318 Fed.Appx. 6 (2d Cir. 2009) ............................................... 21

*Marino v. CACafe, Inc.*, No. 16-6291, 2017 U.S. Dist. LEXIS 64947 (N.D. Cal. Apr. 28, 2017)
................................................................................................................................ 24

*Mevorah v. Wells Fargo Home Mortg., Inc.*, No. 05-1175, 2005 U.S. Dist. LEXIS 28615
(N.D. Cal. Nov. 17, 2005) ............................................................................................. 20

*Milbourne v. JRK Residential Am., LLC*, No. 3:12CV861, 2016 U.S. Dist. LEXIS 33603
(E.D. Va. Mar. 15, 2016) .............................................................................................. 15

*Morgan v. Sundance, Inc.* No. 21-328, (U.S. May 23, 2022) ..................................... 10, 11, 12, 16

*Natl. Union Fire Ins. Co. of Pittsburgh, P.A. v. NCR Corp.*, 376 Fed. Appx. 70 (2d Cir. 2010). 13

*New England Reins. Corp. v. Millers Mut. Fire Ins. Co. of Texas*, 1995 WL 617217
(S.D.N.Y. Oct. 20, 1995) .............................................................................................. 21

*Nicholas A. Califano, M.D., Inc. v. Shearson Lehman Bros. Inc.*, 690 F.Supp. 1354 (S.D.N.Y.
1988) ......................................................................................................................... 21

*O'Connor v. Uber Techs., Inc.*, No. 13-3826, 2013 WL 6407583 (N.D. Cal. Dec. 12, 2013) ....... 8

*OConnor v. Agilant Solutions, Inc.*, 444 F. Supp. 3d 593 (S.D.N.Y. 2020) ................ 6, 18, 22, 23

*O'Connor v. Uber Techs., Inc.,* No. C-13-3826, 2013 U.S. Dist. LEXIS 172477
(N.D. Cal. Dec. 6, 2013) ............................................................................................... 24

*Oxbow Calcining USA Inc. v. American Indus. Partners*, 96 A.D.3d 646, N.Y.S.2d 24
(N.Y. App.1st Dept. 2012) .............................................................................................. 7

*Piekarski v. Amedisys Ill., LLC*, 4 F. Supp. 3d 952 (N.D. Ill. 2013) .......................................... 24

*Robert Lawrence Co. v. Devonshire Fabrics*, 271 F.2d 402 (2d Cir. 1959) ..................... 7, 18, 19

*S R Co. of Kingston v. Latona Trucking*, 159 F.3d 80 (2d Cir. 1998) ...................... 13, 14, 16, 17

*Schnabel v. Trilegiant Corp.*, 697 F.3d 110 (2d Cir. 2012) ....................................................... 8

*Tech. in Partnership, Inc. v. Rudin*, 538 Fed. Appx. 38 (2d Cir. 2013) ....................................... 17

*Tomkins v. Amedisys, Inc.*, No. 12-1082, 2014 U.S. Dist. LEXIS 3661 (D. Conn. Jan. 13, 2014)
................................................................................................................................ 24

*United Steelworkers of Am. V. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960) ................. 6

*Valsana, S.A. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 1987 WL 6908
(S.D.N.Y. Feb. 10, 1987) .............................................................................................. 21

*Weckesser v. Knight Enters. S.E., LLC*, 735 Fed.Appx. 816 (4th Cir. 2018) ................................ 6

*Weight Watchers, Inc. v. Weight Watchers Int'l, Inc.*, 53 F.R.D. 647 (E.D.N.Y. 1971) ............... 8

*Williams v. Securitas Sec. Servs. USA, Inc.*, No. 10-7181, 2011 U.S. Dist. LEXIS 75502
(E.D. Pa. 2011) ........................................................................................................... 24

*Zwitserse Maatschappij Van Levensverzekering En Lijfrente v. ABN Intern. Capital Markets
Corp.*, 996 F.2d 1478 (2d Cir. 1993) ............................................................................ 14

**Statutes**

29 U.S.C. § 206(a) ........................................................................................................... 3

29 U.S.C. § 207(a) ........................................................................................................... 3

9 U.S.C. § 2 ..................................................................................................................... 5

New York Labor Law § 195.1 ............................................................................................. 3

New York Labor Law § 196-d; ........................................................................................... 3

New York Labor Law § 652 ............................................................................................... 3

**Other Authorities**

Fed. Jud. Ctr., Manual for Complex Litig. § 21.12 (4th ed. 2004) ................................... 9

Joseph M. McLaughlin, *McLaughlin on Class Actions* § 11:1 (14th ed. 2018) ............................. 9

**Rules**

Federal Rule of Civil Procedure 23(d) .................................................................. 8, 18, 20, 22, 24

## PRELIMINARY STATEMENT

Plaintiffs Deanna Carollo and Diana J. Owens, on behalf of themselves and all other employees similarly situated (collectively "Plaintiffs"), respectfully submit this Memorandum of Law in Opposition to Defendants United Capital Corp., AFP Management Corp., and AFP 101 Corp. (collectively "Defendants") Motion to Dismiss the Claims of Absent Class Members Who Are Bound By Arbitration Agreements ("Motion"), ECF No.145-5.

This case, a certified class action, has been pending for over six years. Although aware of the facts underling their Motion for years, Defendants waited until the very end of the case to attempt to effectively decertify the case by dismissing the claims of 195 absent class members. Defendants make this Motion even though many of the arbitration agreements were obtained over five years ago, and were obtained unilaterally from class members *after* the commencement of the action. Most glaringly, Defendants move on approximately 22 more individuals who *did not* sign an arbitration agreement, and there is no evidence that they even saw the agreement.

These delays alone are fatal to Defendants' Motion. If a party wants to arbitrate a case, it must do so as early as possible. If a party takes a wait-and-see approach and chooses to substantively litigate for any significant period, the party has waived its ability to switch course and proceed with arbitration. Here, because Defendants voluntarily litigated virtually the entire case (despite knowing of the existence of the arbitration agreements and not raising the issue), the outcome of Defendants' Motion is clear. During the entire six years of extensive litigation in this case, the Defendants have raised many issues, but never sought to bar some class members' claims because of the arbitration agreements. The Defendants did not raise issue in their 2017 Motion for Summary Judgment (ECF No. 68), their Statement of Undisputed Facts in Support that Motion (ECF No. 68-1), nor in their Motion to Disqualify Counsel (ECF No. 63). Defendants ignored arbitration in all four briefs they subsequently filed, the 19 letters Defendants

sent to this Court, and in the 10 status conferences the Court has held. Further, by moving forward with six years of litigation, Plaintiffs and the class would be prejudiced by arbitration.

Defendants waited until the case was four weeks from the close of discovery to suddenly raise arbitration. Although Defendants do not reveal their litigation tactics which prompted them to delay raising the arbitration issue, it appears clearly motivated by a desire avoid this Court, the adverse rulings Defendants have already faced, and the Court's fast-moving schedule. It is far too late to bring this Motion, and Defendants' gamesmanship should not be endorsed.

Even if this Motion had been timely brought, it would still have failed. The agreements were obtained *after* litigation commenced, but failed to make any reference or mention of the pending class action in the arbitration agreement itself. Defendants clearly did not want its new, and legally unsophisticated, employees to learn about this class action in the arbitration agreement it was telling them to sign. Additionally, the agreements are also invalid because they fail to include Class Counsel's contact information or a summary of the allegations. Like the failure to mention the lawsuit altogether, these omissions prevented absent class members from being able to make an informed decision about whether it was in his or her interests to sign the form. Furthermore, the arbitration agreements themselves and the manner in which they were obtained are substantively unconscionable.

For these reasons, and those expressed in detail below, Defendants' Motion should be denied in its entirety.

## FACTS

On January 5, 2016, Plaintiffs filed a class action complaint [ECF No. 1] against Defendants alleging that the Radisson Utica Hotel's (the "Hotel") policies for paying its servers violate New York and federal law in five ways and across five counts: (I) failing to pay minimum wage to Named Plaintiffs and similarly situated employees in violation of the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. § 206(a); (II) improperly calculating the regular rate used to calculate the overtime rate of pay of banquet service workers in violation of FLSA provision 29 U.S.C. § 207(a); (III) illegal retention of mandatory charges collected from customers in violation of New York Labor Law ("NYLL") § 196-d and applicable regulations; (IV) paying subminimum wages to Named Plaintiffs and similarly situated banquet service employees and class members in violation of the NYLL § 650 *et seq.*; and (V) failure to provide wage notices in violation of NYLL § 195.1.

After engaging in significant pre-certification discovery throughout 2016, Defendants moved for summary judgment and Plaintiffs moved for class certification. *See* ECF Nos. 68, 150, 153. On March 24, 2021, this Court denied Defendants' Motion and certified the class. *See* ECF No. 87. In the more than six years that have elapsed since this case was filed, the parties have extensively litigated this case, including:

- 4 fully briefed motions;
- Over 20 letters from counsel to the Court;
- Two failed mediation attempts;
- 8 notices of appearance by separate attorneys;
- 14 depositions;
- 141 discovery requests from Plaintiffs and 612 discovery requests from Defendants;[1]
- Production of over 1,800 pages of documents by Plaintiffs and over 36,100 pages of documents by Defendants (including payroll/time records and personnel files of absent class members); and
- Countless emails, letters, and meet and confers between the parties.

Declaration of Jessica Lukasiewicz ("Lukasiewicz Decl. ¶ 3) attached hereto as Exhibit 1. Further, even when considering only the time that has passed since plaintiffs' certification motions were granted, significant discovery has been completed, including eight (8) depositions, a failed mediation attempt, eleven (11) letters to the Court, the production of over 18,500 pages

---

[1] Defendants' total number of discovery request included those directed to the two named plaintiffs and seven opt-in plaintiffs.

of documents (including absent class members' payroll, time and personnel documents), and

numerous conferrals with Defendants as to discovery. *See id*. ¶ 4. Over the course of the lengthy

litigation, Class Counsel incurred substantial time and expense, including in connection with

depositions, other discovery, and the class notice process. *Id.* ¶ 5.

       During this entire time Defendants knew of the existence of the arbitration issue but

deliberately kept that information from both the Court and Class Counsel. As part of onboarding

new hires, Defendants required 195 prospective class members to sign arbitration agreements

(the "Arbitration Agreements" or "Agreements") ostensibly waiving their right to participate in

this action. *See* Exhibit A, attached to the Declaration of Ellen Callas ("Callas Decl."), ECF No.

145-3; *see also* Declaration of Sarah Bielby ¶ 4, attached to the Likasiewisz Decl. as Exhibit A

("Bielby Decl."); Declaration of Aneesha Curet ¶ 4, attached to the Likasiewisz Decl. as Exhibit

B ("Curet Decl."); Declaration of David Garcia ¶ 4, attached to the Likasiewisz Decl. as Exhibit

C ("David Garcia Decl."); Declaration of Dominick Joseph Garcia ¶ 4, attached to the

Likasiewisz Decl. as Exhibit D ("Dominick Garcia Decl."); Declaration of Eason Harvard ¶ 4

attached to the Likasiewisz Decl. as Exhibit E ("Harvard Decl.").[2] Defendants even claim that at

least an additional 22 class members *who did not even sign a form* are barred from proceeding

merely because other employees signed the Agreements. Callas Decl. at ¶ 9. Defendants did not

identify this pending class action in a single one of these Arbitration Agreements, let alone

provide a summary of the underlying factual allegations and claims at issue. Lukasiewicz Decl. ¶

6. Further, none of the Arbitration Agreements informed prospective class members that signing

would eliminate their opportunity to participate in this case, and none provided contact

information for Class Counsel so that prospective class members could seek advice and reach an

---

[2] The Bielby, Curet, David Garcia, Dominick Garcia, and Harvard Declarations shall be referred to collectively herein as the "Absent Class Member Decls."

informed choice as to whether they would elect to waive their rights at issue here. *Id.* at ¶ 7; Absent Class Member Decls. at ¶¶ 7-11.

Defendants continued to solicit these Agreements from new hires in positions at issue in this action such as housekeeper and banquet servers without disclosing the existence of this case in the face of this Court's ruling certifying multiple classes under the FLSA and NYLL. As Defendants freely admit, "[a]fter the commencement of the instant lawsuit in January 2016, the Hotel implemented a policy requiring all new employees who were not employed prior to the commencement of this action, to agree *immediately before* commencing their employment with the Hotel to arbitrate any disputes they have with the Hotel." Callas Decl. ¶ 8 (emphasis added); Absent Class Member Decls. ¶¶ 4-6. Of the 195 Arbitration Agreements that are at issue here (and additional 22 which were not signed), 138 were executed after Plaintiffs filed their certification motions, and 2 were executed even after the Court's March 24, 2021 class certification decision. *See* Memorandum-Decision and Order, ECF No. 87. Defendants provided no mechanism to opt out of arbitration or the class action waiver, but rather provided the arbitration agreements on a take-or-leave basis as a condition of employment for new hires. *See* Absent Class Member Decls. ¶¶ 4-11. Defendants' actions appear to be ongoing.

## ANALYSIS

## I.   LEGAL STANDARDS

The Federal Arbitration Act ("FAA") governs whether a claim is arbitrable. *See* 9 U.S.C. Section 2. The FAA preempts any state laws that disfavor arbitration contracts in comparison with other contracts and requires that arbitration agreements be treated like all other contracts under state law. *Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co., Ltd.,* 189 F.3d 289, 295-96 (2d Cir. 1999). There is no presumption favoring arbitration when there are "disputes concerning whether an agreement to arbitrate has been made." *Goldman, Sachs & Co. v. Golden*

5

*Empire Schs. Fin. Auth.*, 764 F.3d 210, 215 (2d Cir. 2014). Indeed, "[a]rbitration is a matter of consent, not coercion." *Butto v. Collecto Inc.*, 845 F.Supp.2d 491, 499 (E.D.N.Y. 2012 "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960).

To determine which state law governs the interpretation of an arbitration contract, "a federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state." *Forest Park Pictures v. Universal Television Network, Inc.,* 683 F.3d 424, 433 (2d. Cir. 2012)). Because this case was brought in New York, its law will determine which law governs the dispute. To determine whether an agreement to arbitrate exists, the Court applies "ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Accordingly, state-law grounds for the revocation of any contract apply with full force to arbitration agreements. *See OConner v. Agilant Solutions Inc.*, 444 F.Supp.3d 593, 603 (S.D.N.Y. 2020) (defenses such as fraud, duress, or unconscionability apply).

As the Second Circuit explained succinctly, if the "arbitration clause was induced by fraud, there can be no arbitration[.]" *Robert Lawrence Co. v. Devonshire Fabrics*, 271 F.2d 402, 411 (2d Cir. 1959). To state a legally cognizable claim of fraudulent inducement based on a misrepresentation or omission, the complaint must allege that the defendant intentionally made a material misrepresentation of fact in order to defraud or mislead the plaintiff, and that the plaintiff reasonably relied on the misrepresentation and suffered damages as a result. *See Oxbow Calcining USA Inc. v. American Indus. Partners*, 9948 N.Y.S.2d 24 (N.Y. App.1st Dept. 2012).

Further, under New York law, an agreement is "unconscionable when it is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable . . . according to its literal terms." *Eisen v. Venulum Ltd.*, 244

F.Supp.3d 324, 341 (W.D.N.Y. 2017). In other words, a party opposing arbitration must make "some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *State v. Wolowitz*, 468 N.Y.S.2d 131, 145 (1983). This doctrine "is flexible, and is intended to be sensitive to the realities and nuances of the bargaining process." *Eisen*, 244 F.Supp.3d at 341 (internal citation omitted). "Procedural and substantive unconscionability operate on a 'sliding scale'; the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa." *Wolowitz*, 468 N.Y.S.2d at 145. Procedural unconscionability concerns the contract formation process and the alleged lack of meaningful choice. *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 382 (S.D.N.Y. 2002). Courts look to the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party, and whether there was disparity in bargaining power. *Id*. As to substantive unconscionability, the court examines the substance of the Agreement in order to determine whether the terms unreasonably favor one party." *Brower v. Gateway 2000*, 246 A.D.2d 246, 254 (1st Dept. 1998). This "element alone may be sufficient to render the terms of the provision at issue unenforceable." *Id.*

In evaluating a motion to compel arbitration, "the court applies a standard similar to that applicable for a motion for summary judgment." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012) (quotation omitted).

## II.    RULE 23 GRANTS THE COURT WIDE DISCRETION TO OVERSEE THE CLASS, AND TO INVALIDATE THE AGREEMENTS

A key feature of class action litigation is Court supervision to ensure fairness to absent class members. This is because until class certification, absent class members are not parties to the action, and—unless and until a successful class certification and completion of a notice

program—they are presumptively unaware of the existence of the class action and their related rights. Thus, Federal Rule of Civil Procedure 23(d) vests the court with "supervisory authority over a defendant's communications with putative class members." *In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 569 (S.D.N.Y. 2004) (hereinafter, *In re Currency I*).

Rule 23(d) specifically empowers the court at any point after the filing of a class action to enjoin a defendant's communications with absent class members and also to *correct* the effect of prior communications. *See, e.g.*, *O'Connor v. Uber Techs., Inc.*, No. 13-3826, 2013 WL 6407583, at *7 (N.D. Cal. Dec. 12, 2013) ("This discretion includes requiring the issuance of corrective notices and action to ameliorate confusing or misleading communications."); *Weight Watchers, Inc. v. Weight Watchers Int'l, Inc.*, 53 F.R.D. 647, 650 (E.D.N.Y. 1971) (holding that Rule 23 "confide[s] in the federal judiciary a *wide range of discretion* to prevent abuse in class actions or to issue remedial orders where abuse has already occurred") (emphasis added). As the Manual for Complex Litigation notes, "Rule 23(d) authorizes the court to regulate communications with potential class members, even before certification." Fed. Jud. Ctr., Manual for Complex Litig. § 21.12 (4th ed. 2004); *see also Hinds Cnty. v. Wachovia Bank, N.A.*, 790 F. Supp. 2d 125, 134 (S.D.N.Y. 2011).

"[T]o protect the integrity of the class and the administration of justice generally," a court's Rule 23(d) authority extends to "communications that mislead or otherwise threaten to influence the threshold decision whether to remain in the class," as well as to those that "seek or threaten to influence [one's] choice of remedies." *In re Sch. Asbestos Litig.*, 842 F.2d 671, 683 (3d Cir. 1988); *accord Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1202 (11th Cir. 1985) (In class actions "it is obviously in defendants' interest to diminish the size of the class and thus the range of potential liability by soliciting exclusion requests. Such conduct reduces the

effectiveness of the 23(b)(3) class action for no reason except to undermine the purposes of the rule.") (citation omitted); *In re Currency I*, 224 F.R.D. at 569 (Exercising "supervisory authority over a defendant's communications with putative class members . . . is particularly apt where a defendant attempts to alter the contours of the litigation or the availability of remedies."). When evaluating the propriety of a defendant's communications with absent class members that secure waivers of rights, a court's discretion is broad. It may consider simply the timing and purpose of the defendant's communication, whether the defendant informed class members of the pending case, accurately summarized the claims and rights at issue, or provided Class Counsel's contact information. The failure to do any one of which may render a communication misleading. *See, e.g.*, 2 McLaughlin on Class Actions § 11:1 (14th ed. 2018) (collecting cases).

## ARGUMENT

The Court should deny Defendants Motion because Defendants have waived arbitration by waiting until the eleventh hour–after proceeding through litigation for more than six years and as discovery is set to close. Defendants' plan is an artifice to avoid the Court's decision certifying the class, and the mounting bad decisions weighing on Defendants as they tumble toward the end of discovery and ultimately to summary judgment briefing and trial. Yet even if the Court does not determine that Defendants waived their ability to dismiss the 217 employees, Defendants' conduct in securing the Agreements—along with the terms of the Agreements themselves—render them unenforceable for four independent legal reasons. *First*, because Defendants failed to disclose the existence of the case and provide them with necessary information to reach the decision whether to sign the contract, Defendants fraudulently induced absent class members into signing the Agreements. *Second*, Defendants secured all of the Agreements after this case was filed, failed to include contact information for Class Counsel. *Third*, the signed agreements were the product of improper communication with putative class

members. Accordingly, Defendants have run afoul of the Court's authority to oversee this case as

a class action, and the Agreements should not be enforced. *Fourth*, and finally, the circumstances

surrounding the execution of the Arbitration Agreements, along with the terms of the

Agreements themselves, render them unconscionable and thus, unenforceable.

**I.      DEFENDANTS WAIVED THEIR OPPORTUNITY TO SEEK ARBITRATION BY WAITING SIX YEARS AFTER COMMENCEMENT OF THE ACTION**

Waiting more than six years *after* the commencement of this action, Defendants have

waived their ability to dismiss employees from this action. The Supreme Court, in a decision

issued just two weeks ago, provided the framework this Court should use to conclude Defendants

waived any right to arbitration. Specifically, in *Morgan v. Sundance, Inc.*, _S.Ct._, No. 21-328,

2022 WL 1611788, at *5-6 (May 23, 2022)*,* the Supreme Court addressed whether the FAA's

broad support for arbitration permitted courts to impose additional arbitration-specific

requirements before a party is found to have waived its right to arbitrate. The Eighth Circuit, like

many circuits including the Second, had crafted a set of arbitration-specific rules to judge

whether a party had waived its right to arbitration, such as requiring the opposing party to

demonstrate it had suffered prejudice as a result. *Id.*at *6. The Supreme Court flatly rejected that

proposition. The Supreme Court held that courts must apply *only* the traditional rules of waiver

rather than inventing arbitration-specific waiver rules. *Id.* at *5. "To decide whether a waiver has

occurred, the court focuses on the action of the person who held the right; the court seldom

considers the effects of those actions on the opposing part. That analysis applies to the waiver of

a contractual right, as any other." *Id.*at *6.

The Court thus not only overruled the Eighth Circuit's heightened requirements for

waiver in the context of arbitration, it also swept aside the precedents from most other circuits,

including the Second, that had added additional criteria on the traditional standard for waiver

when the case involved arbitration. *Id.* at n.1 (citing specifically Second Circuit precedent which had previously required showing beyond mere waiver to oppose arbitration). Prior to *Morgan*, courts in the Second Circuit considered three factors in addition to traditional waiver requirements to determine if a party had waived its right to arbitrate. These factors are no longer part of the waiver analysis. Rather, the inquiry, as explained by Justice Kagan writing for a unanimous Court, should be limited to whether Defendants "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right?"

Defendants ignore this inquiry, attempting to shoehorn additional factors into the analysis. While, as analyzed below, Defendants' motion should not be granted under the old standard, under *Morgan's* clear focus on the prospective waiving party's actions, Defendants' argument clearly lacks merit. Defendants' conduct throughout the past six years of litigation has been wholly inconsistent with an intention to arbitrate. Indeed, as noted above, the parties have expended time and resources briefing motions, submitting 20 letters to the Court, completing nearly all of discovery, including completing 14 depositions, drafting and/or responding to approximately 612 discovery requests and Defendants served responses to Plaintiffs' discovery requests, reviewing the 30,000 pages of documentation produced by Defendants (including documentation as to the absent class member), and conferred on numerous discovery issues. Accordingly, they have waived the right to arbitrate now.

## II.   EVEN BEFORE *MORGAN*, DEFENDANTS WOULD STILL HAVE WAIVED THEIR ABILITY TO SEEK DISMISSAL OF EMPLOYEES

Even under the three-factor analysis previously applied by the Second Circuit, Defendants have still waived their ability to seek dismissal of employees.

When evaluating whether there has been a waiver by a defendant, the Second Circuit previously considered three factors (a) the time elapsed from the commencement of litigation to

11

the requestion for arbitration; (b) the amount of litigation (including exchange of pleadings, any substantive motions, and discovery); and (c) proof of prejudice, including taking advantage of pre-trial discovery not available in arbitration, delay, and expense. *PPG Indus., Inc. v. Webster Auto Parts, Inc*., 128 F.3d 103 (2d Cir. 1997).

### A.    The Amount of Time Elapsed Between Commencement of the Case and When Defendants Sought Arbitration Weighs in Favor of Waiver

By waiting more than six years from commencement of the action, the factor considering the amount of time that has elapsed between commencement and when arbitration was sought weighs in favor of waiver. Courts have found waiver when defendants waited far less than the six years from commencement of the action. *See Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 626 F.3d 156 (2d Cir. 2010) (arbitration waived when 11 months elapsed between filing and motion to compel arbitration); *Doe v. Trump Corp.*, 453 F.Supp.3d 634, 643-44 (S.D.N.Y. 2020), aff'd, 6 F.4th 400 (2d Cir. 2021) (the court found waiver when eight months elapsed between commencement of litigation and a requestion for arbitration); *PPG Indus.,* 128 F.3d 103 (the court found waiver when only five months passed between the time arbitrable claims were asserted and arbitration was sought); *Leadertex Inc.,* 67 F.3d 20 (finding of waiver when seven months elapsed); *Commercial Lubricants, LLC v. Safety-Kleen Systems, Inc.,* 14 Civ. 7483, 2018 WL 5045760 at *7 (E.D.N.Y. Oct. 17, 2018) (finding of waiver when seven months elapsed); *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. NCR Corp*., 376 Fed. Appx. 70, 72 (2d Cir. 2010) (finding that arbitration was waived after the parties have been litigating for more than three years).

Here, *far* more time has passed here than in *Doe, PPG, Leadertex,* and *Commercial Lubricants,* between the commencement of the action and Defendants' attempts to arbitrate. Indeed, Defendants waited more than 6 years, on the eve of discovery closing to for the first time

meaningfully raise arbitration. Thus, this factor weighs in favor of a finding that Defendants

waived their ability to arbitrate.

     **B.**     **Substantive Litigation Has Taken Place, Thus Defendants Waived their Ability to Seek to Dismiss Employees.**

     In the time since commencing the action and Defendant raising arbitration, substantive

litigation has occurred, thus favoring a finding of waiver. "[T]he amount of litigation (including

exchanges of pleadings, any substantive motions, and discovery)" weighs in favor of waiver. *S R*

*Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 83 (2d Cir. 1998); *see also NCR Corp.*,

376 Fed. Appx. 70 (finding waiver when both parties participated in pre-trial litigation including

discovery, scheduling conferences, and taking depositions that would be unavailable during

arbitration.). Further, courts also consider whether any such discovery would not have been

available in arbitration. *See Zwitserse Maatschappij Van Levensverzekering En Lijfrente v. ABN*

*Intern. Capital Markets Corp.*, 996 F.2d 1478 (2d Cir. 1993) (waiver when defendant engaged in

deposition discovery not available in arbitration); *Latona Trucking.*, 159 F.3d 80 (waiver when

defendant engaged in extensive discovery, obtaining information not available in arbitration).

     During the past six years, the parties have expended time and resources briefing

Defendants' Motion to Disqualify Counsel, Defendants' Motion for Summary Judgment,

Plaintiffs' Motion for Conditional Certification and Notice Pursuant to the FLSA, and Plaintiffs'

Motion for Rule 23 Certification.  *See* ECF No. 134, 141, 150, 153.  Further, the parties have

sent over 20 letters to the Court and completed nearly all of discovery. Lukasiewicz Decl. ¶ 8.

Indeed, Defendants served (and Plaintiffs responded to) approximately 612 discovery requests

and Defendants served responses to Plaintiffs' discovery requests. *Id.* ¶ 9. Also, Defendants have

produced significant documentation as to the claims and the class, in the range of more than

30,000 pages, including payroll records and personnel files for the very individuals Defendants

now seek to exclude from the action. *Id.* ¶ 10-11. Additionally, the parties have now completed 14 depositions which include Defendants' depositions of named plaintiffs and class members. Nevertheless, now, after six years of protracted litigation that required significant cost and resources by the parties and this Court, without any justification or excuse for such a delay, Defendants now seek to dismiss approximately 217 individuals (of which 22 do not even have Arbitration Agreements) and require them to go through arbitration and seemingly re-litigate their case. Much of the discovery, such as the discovery related to class certification, would be unavailable during arbitration. Therefore, because substantive litigation has occurred (some of which would be unavailable during arbitration), Defendants have waived their ability to arbitrate.

Even if the Court only considers the substantive litigation occurring post-class certification, which has not been determined by the Second Circuit as appropriate, Defendants still completed significant substantive litigation during the last ten months. *See B & R Supermarket, Inc. Visa Inc.*, No. 17-CV-02738, 2021 WL 4408167 (E.D.N.Y. Sept. 27, 2021). In fact, courts have often found instances of waiver when far shorter periods of time have elapsed. *See Doe*, 453 F.Supp.3d at 643-44 (S.D.N.Y. 2020), *aff'd*, 6 F.4th 400 (2d Cir. 2021) (eight months); *PPG Indus.,* 128 F.3d 103 (five months); *Leadertex Inc.,* 67 F.3d 20 (seven months); *Commercial Lubricants, LLC,* 2018 WL 5045760 at *7 (seven months).

Here, Rule 23 and FLSA certification was granted on March 24, 2021. *See* ECF No. 87. The deadline to opt out of the class expired on July 23, 2021. *Id.* ¶ 7. Ten months later, Defendants first filed their pre-motion letter on April 29, 2022. *See* ECF No. 136. During these ten months, much of the discovery for the action was completed. In fact, currently discovery is set to end on June 10, 2022. *See* ECF No. 140. For instance, during this time, plaintiffs completed depositions of Amanda Crandall, Domenica Marie Dinigro, Judith Ann Hobaica,

14

Joyce Mandel, Nicole Traficana, Carrie Wright. Defendants deposed Sadina Korman. Further, approximately 268 discovery requests were responded to and 11 letters to the Court were submitted during this time.  Despite the majority of discovery being completed during this period, and the time and resources expended to complete such discovery, Defendants now to dismiss 217 individuals to require them to arbitrate their claims. Once again, the discovery as it relates to the class (and the absent class members) would likely be unavailable during arbitration, and thus waiver would be appropriate here as well.

Additionally, in considering this factor in class actions, courts consistently hold that a defendant waives the right to arbitrate if it fails to raise any intent to compel arbitration concurrently with class certification. *See, e.g., Healy v. Cox Commc'ns, Inc. (In re Cox Enters., Inc. Set-Top Cable Television Box Antitrust Litig.)*, 790 F.3d 1112, 1119 (10th Cir. 2015) (defendant waived right to arbitrate by failing to "assert[] its right to arbitrate against the absent class members as a possible defense against class certification"); *In re Citigroup, Inc*., 376 F.3d at 26-27 (same, by waiting until after class was certified); *Edwards v. First Am. Corp*., 289 F.R.D. 296, 306-308 (C.D. Cal. 2012) (same); *Milbourne v. JRK Residential Am., LLC*, No. 3:12CV861, 2016 U.S. Dist. LEXIS 33603, at *8 (E.D. Va. Mar. 14, 2016) ("[Defendant] knowingly failed to mention the arbitration issue in its opposition to Plaintiffs' motion for class certification. It is well-settled that 'the class certification decision is generally the most important aspect of a class action case. If a court certifies the case to proceed as a class action, the case's dynamics change dramatically[.]' . . . Therefore, Plaintiffs were significantly prejudiced by not being able to appropriately address the issue at that time.") (citations omitted).

Here, Defendants failed to make their intent to arbitrate clear in submitting their Opposition to the Motion for Class Certification. In fact, Defendants made only oblique,

unsupported reference to the existence of the Arbitration Agreements in their Opposition to the

Motion for Class Certification. *See* Def. Mem. In Opp. To Mot. For Class Cert, ECF No. 73 at 7

("Additionally, many potential class members who were hired after the lawsuit was commenced

agreed to arbitrate all claims they have against Defendants on an individual basis. These

individuals must be excluded from the numerosity analysis."). No further information was

provided, nor argument made that a motion to compel arbitration was forthcoming. Notably,

Defendants did not attach the Arbitration Agreements to their motion papers. *See* ECF No. 7.

And, as explained in Plaintiffs' Reply in Support of Motion to Certify the Class, ECF No. 80 at 1

n.1, Defendants failed to provide any information related to the Arbitration Agreements prior to

the certification-related discovery deadline of April 24, 2017. Accordingly, this Court did not

address the issue in its Order Certifying the Class and no further mention of the Arbitration

Agreements has been made by Defendants until now.

Defendants' generic, unsupported reference to the Arbitration Agreements and

abandoning the argument to proceed with the case underscores Defendants' knowing wavier of

arbitration. Defendants made the strategic decision to proceed with the case through litigation

and failed mediation attempts. They do not get a do-over now, while facing the end of discovery

and the likely trial on the merits of this case.

### C.      Plaintiffs Would Be Prejudiced If This Court Compels Arbitration

While the Second Circuit's "proof of prejudice" factor was squarely rejected as a

*requirement* by the Supreme Court in *Morgan*, Plaintiffs bound by arbitration agreements would

indeed be prejudiced if compelled to arbitrate their claims.

The Second Circuit recognizes both substantive prejudice and prejudice due to excessive

cost and time delay. *Kramer v. Hammond,* 943 F.2d 176, 179 (2d Cir. 1991) (internal citation

omitted). *See Leadertex Inc.*, 67 F.3d at 20 (finding prejudice when defendant took advantage of

16

discovery procedures before seeking to have the case sent to arbitration, where such procedures are not available); *Latona Trucking*, 159 F.3d at 83-84 ("Prejudice results when a party seeking to compel arbitration engages in discovery procedures not available in arbitration, makes motions going to the merits of an adversary's claims, or delays invoking arbitration rights while the adversary incurs unnecessary delay or expense.") (internal quotation marks omitted).

      Here, Plaintiffs and the class face *both* enormous substantive prejudice and prejudice due to excessive cost and time delay.  Regarding substantive prejudice, it is now clear that Defendants, unhappy with the Court's Certification Order and the denial of Defendants' Motion for Summary Judgment, seeks to undo that Order through arbitration.  Plaintiffs and their Counsel have relied on the pleadings, rulings, and extensive discovery over six-plus years to shape their case, including Court rulings on Defendants' Motion for Summary Judgment, Plaintiffs' Motion for Class Certification, Defendants' Amended Answers,[3] Court rulings on discovery issues, and the extensive discovery itself.  In fact, Defendants failed to identify arbitration as a defense in their Answer, as well as their Amended Answer.  And thus, Plaintiffs were prejudiced by Defendants' omissions and were forced to litigate potentially arbitrable issues. *See Com-Tech Associates v. Computer Associates Intern., Inc.,* 938 F.2d 1574, 1577 (finding that defendants' failure to raise arbitration until 18 months after filing their first answer, where arbitration was not raised in their answer). Further, over the course of this extensive litigation, Class Counsel also incurred substantial litigation expenses while completing the 14 depositions, responding to the 612 discovery requests, writing letters to the Court, attending Court conferences, reviewing the more than 30,000 documents produced, and briefing the four motions that have been filed to date. *See* Lukasiewicz Decl. ¶¶ 3-12.

---

[3] Defendants' Answer was filed on March 30, 2016 and Amended Answer on March 31, 2016. Neither contained any defense of arbitration. *See* ECF Nos. 18, 19.

If Defendants' "heads I win, tails you lose" gamesmanship were permitted, any employer could sit on its purported arbitration rights throughout the entire course of a litigation, and then jump to a friendlier forum if the court disagreed with its positions, or roll out Arbitration Agreements years after the start of the case to create a one-way escape hatch from court. There is no case which permits such substantial prejudice to Plaintiffs, thus Defendants have waived their ability to seek dismissal of the 217 employees. Defendants' failure to raise this issue until mediation failed and the case was set to proceed puts their gamesmanship in stark relief and thus this Court should find Defendants waived their ability to arbitrate.

## III.   EVEN IF THE COURT DOES NOT FIND WAIVER, THE AGREEMENTS SHOULD NOT BE ENFORCED

Yet even if Defendants are not deemed to have waived the right to arbitrate, their conduct in obtaining the Arbitration Agreements render them unenforceable. First, because Defendants failed to disclose the existence of the class action, Defendants fraudulently induced absent class members into signing the Agreements. As such, there is no enforceable contract. *Devonshire Fabrics*, 271 F.2d at 411. Second, Defendants signed all of the Agreements after this case was filed, failed to include contact information for Class Counsel, and had improper communication with putative class members. Accordingly, Defendants have run afoul of the Court's authority to oversee this case as a class action, and the Agreements should not be enforced. *See In re Currency I*, 224 F.R.D. at 570. Third, and finally, the circumstances surrounding the execution of the Arbitration Agreements, along with the terms of the Agreements themselves, render them unconscionable and thus, unenforceable. *Agilant Solutions*, 444 F. Supp. 3d 593.

### A.   Defendants Forced Employees Into the Agreements After the Case Was Filed

Defendants sought waivers of rights from 217 putative class members after this case

18

was filed. This alone provides the Court with sufficient reason to strike the agreements at issue. *In re Currency I* provides a persuasive example of how courts exercise this authority. There, the court held that, "the arbitration clauses [could] not be enforced because [d]efendants modified the cardholder agreements after this [litigation] commenced." 224 F.R.D. at 570. "*Regardless of* any cardholders' *knowledge* of this action," under Rule 23(d), the agreements were unenforceable specifically because of the suspect timing. *Id.* (emphasis added); *see also Hampton Hardware, Inc. v. Cotter Co., Inc.*, 156 F.R.D. 630 (N.D. Tex. 1994); *Long v. Fidelity Water Sys., Inc.*, 2000 WL 989914 (N.D. Cal. May 26, 2000). *In re Currency I*'s reasoning applies with equal force here: regardless of whether the agreements are for arbitration or waiver of class litigation, all agreements at issue were obtained after Plaintiffs filed the Complaint on January 5, 2016, for the purpose of eliminating class liability. Here, given that the arbitration agreements were entered into *after* the filing of the action, the Court need not engage in any further analysis and may refuse to enforce the Agreements under Rule 23.

### B.    Defendants Failed to Disclose the Existence of the Pending Class Action

Beyond timing alone, Defendants' failure to disclose the existence of this litigation in any of the Arbitration Agreements at issue is a misleading and improper attempt to secure unknowing waivers of rights. Thus, this Court should void Defendants' Arbitration Agreements.

Courts routinely strike arbitration agreements (or release of claims) under Rule 23 where the defendant fails to apprise class members of the pending case in which they would be forfeiting participation. *See Balasanyan,* 2012 WL 760566 (finding dispute resolution agreement unenforceable for failure to alert putative class members of litigation); *Jimenez*, 2015 WL 4914727, at *5 (finding unenforceable a post-litigation agreement where the defendant did not inform "putative class members of the pending litigation"); *Cheverez*, 2016 WL 861107, at *4 ("The First Release was misleading because it failed to notify victims that these class actions

existed."). Indeed, courts have noted "[t]o allow defendants to induce putative class members into forfeiting their rights by . . . failing to disclose the existence of litigation would create an incentive to engage in misleading behavior." *Balasanyan*, 2012 WL 760566, at *3.

In other cases where there have been minimal disclosures regarding a pending class case, courts have exercised authority under Rule 23 to void agreements because the defendants provided *insufficient* or *inaccurate* information. *See, e.g.*, *Cheverez*, 2016 WL 861107, at *4 ("[a]lthough the Second Release notifies victims that a consolidated class action exists, it does not provide additional information, such as an explanation of the Plaintiffs' claims."); *Gonzalez v. Preferred Freezer Servs. LBF, LLC*, 2012 WL 4466605, at *1 (C.D. Cal. Sep. 27, 2012) (finding waivers solicited from employees were misleading where they "did not include any information regarding this class action, except that a former employee had brought a lawsuit against" the defendant); *Mevorah v. Wells Fargo Home Mortg., Inc.*, No. 05-1175, 2005 WL 4813532, at *4-5 (N.D. Cal. Nov. 17, 2005) (finding an employer's communications with class members misleading and improper where the employer provided an inaccurate description of the potential effect of the employment lawsuit on the compensation system in the workplace).

Here, like in *Balasanyan*, Defendants failed to disclose a material fact highly relevant to the Arbitration Agreement—namely that there was pending litigation and that by signing, individuals would be sacrificing the right to participate in the case. *See, e.g.* Arbitration Agreement, ECF No. 154-4, at 1. Further, also like in *Balasanyan,* allowing these individuals to be dismissed now would send a message to employers that one can benefit by misleading employees into signing arbitration agreements and ultimately ensuring that few, if any, ever pursue their claims. Indeed, their failure to include the pending litigation was intentional. As Defendants freely admit, they only instituted the policy of requiring such Agreements *after* this

case was filed. *See* Callas Decl. ¶ 9. Further, Defendants plainly pressured employees into signing an agreement they did not understand in order to circumvent the established practices of class action cases under Rule 23. *Id.* (employees had to "agree immediately before commencing their employment"). Had Defendants' employees known what they were giving up, they would not have signed the Arbitration Agreements, and they have all suffered damages. *See* Absent Class Member Decls. ¶¶ 10-11. These absent class members ostensibly waived the right to participate in this class action without the assistance of counsel or the supervision of the Court. As such, any Arbitration Agreement is void because it was obtained through fraudulent inducement. *Devonshire Fabrics*, 271 F.2d at 411.

  Moreover, the circumstances surrounding the execution of the Arbitration Agreements reveal significant procedural unconscionability. The employees signing the Arbitration Agreements were unsophisticated parties being hired for relatively low-paying jobs at the Hotel. In contrast, the Hotel is a large corporate entity with sophisticated counsel and who, critically, *was already engaged in litigation against a class of its employees.* Moreover, employees were told that signing the Arbitration Agreements were a requirement to work at the Hotel, putting them in the unenviable position of either having to find a new job or signing the Arbitration Agreement. *See* Absent Class Member Decls. ¶¶ 4-6. It should be no surprise then that nearly every prospective employee signed the Agreement, especially considering they did not know they were giving up specific and important rights, such as participating in this class action. In *Agilant Solutions,* the court found an arbitration agreement to be procedurally unconscionable because defendants did not disclose that by signing the arbitration agreement new employees would lose their right to participant in an ongoing class action lawsuit. 444 F. Supp. 3d 593 (S.D.N.Y. 2020). By failing to disclose the ongoing class action lawsuit, Defendants effectively

21

eliminated any meaningful choice for new employees, as they were rendered unaware of the ongoing alternative to arbitration resolution. *Id.*; *see also Brennan*, 198 F. Supp. 2d 377 (finding of procedural unconscionability based on defendant's failure to address the impact of the arbitration agreement on pending complaints against the defendant). Thus, the Agreements are thus procedurally unconscionable and unenforceable.

### C.   Defendants Failed to Provide Class Counsel's Contact Information or a Summary of the Allegations

The Court should also void the Arbitration Agreements because Defendants did not provide putative class members an opportunity to consult with Class Counsel to make an informed choice as to whether to waive their participation in this case.

Under Rule 23(d), courts routinely hold that arbitration agreements "are misleading where they do not permit a putative class member to fully evaluate his [or her] likelihood of recovering through the class action." *Cheverez*, 2016 WL 861107, at *4. Consulting with attorneys for the plaintiff class aids class members in considering how to act when presented with an agreement that will waive their rights. But here, just as Defendants never even listed the name of this pending case in any of its agreements, it likewise never provided Class Counsel's contact information. The omission of Class Counsel's contact information also stands as a ground to strike all of the waivers at issue here. *See id.*; *Griffin v. Aldi, Inc.*, No. 16-CV-0354, 2017 WL 1957021, at *5 (N.D.N.Y. May 11, 2017); *Camp v. Alexander*, 300 F.R.D. 617, 625 (N.D. Cal. 2014) (striking waivers where "key information, such as plaintiffs' counsel's contact information and a full description of the claims or the complaint" was missing); *Cnty. of Santa Clara v. Astra USA, Inc.*, No. 05-3740, , 2010 WL 2724512, at *4 (N.D. Cal. July 8, 2010) (invalidating release under Rule 23 because there was no summary of plaintiffs' complaint, explanation of claims, counsel's contact information, or current status of the case); *Burford v.*

22

*Cargill, Inc.*, No. 05-CV-283, 2007 WL 81667, at 2 (W.D. La. Jan. 9, 2007) (lack of notification

of the pending putative class action was misleading as a matter of law) The waivers here should

be invalidated for the same reasons.

Additionally, Defendants' lack of proper disclosure renders the Agreements procedurally

unconscionable. Defendants required Arbitration Agreements for new employees as a condition

of employment, failed to provide contact information for Class Counsel, and did not provide a

summary of the underlying factual allegations and claims at issue. Such behavior is

unconscionable, and the Arbitration Agreements are unenforceable. *See Agilant Solutions*, 444 F.

Supp. 3d 593; *Brennan*, 198 F. Supp. 2d 377.

### D.     The Arbitration Agreements Are the Product of Improper Communications with Putative Class Members

Courts routinely invalidate releases, arbitration agreements, and class action waivers

secured by a defendant's unsupervised communication with class members. *See, e.g.*, *In re

Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 254 (S.D.N.Y. 2005)

("[D]efendants' unsupervised communications were improper because they sought to eliminate

putative class members' rights . . . . [T]hose arbitration clauses may not be enforced because

[defendants] added them, without notice, after this litigation commenced."); *Tomkins v.

Amedisys, Inc.*, No. 12-1082, 2014 U.S. Dist. LEXIS 3661, at *2 (D. Conn. Jan. 13, 2014)

(same); *Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914, 923-24 (11th Cir. 2014) (same);

*Marino v. CACafe, Inc.*, No. 16-6291, 2017 U.S. Dist. LEXIS 64947, at *3 (N.D. Cal. Apr. 28,

2017) (same); *DeGidio v. Crazy Horse Saloon & Restaurant, Inc.*, No. 13-2136, 2 2017 U.S.

Dist. LEXIS 219018, at *7-8 (D.S.C. 2017) (same), *aff'd*, 880 F.3d 135 (4th Cir. 2018) *Cheverez

v. Plains All Am. Pipeline, L.P.*, 15-4113, 2016 U.S. Dist. LEXIS 27818, at *7 (C.D. Cal. Mar. 3,

2016) (same); *Jimenez v. Menzies Aviation, Inc.*, No. 15-2392, 2015 U.S. Dist. LEXIS 108223, at

*6 (N.D. Cal. Aug. 17, 2015) (same); *O'Connor v. Uber Techs., Inc.,* No. C-13-3826, 2013 U.S.
Dist. LEXIS 172477 at *7 (N.D. Cal. Dec. 6, 2013) (same); *Piekarski v. Amedisys Ill., LLC,* 4 F.
Supp. 3d 952, 956 (N.D. Ill. 2013) (same); *Balasanyan v. Nordstrom, Inc.,* No. 11-2609, 2012
U.S. Dist. LEXIS 30809, at *1–2, 4 (S.D. Cal. Mar. 8, 2012) (same); *Williams v. Securitas Sec.
Servs. USA, Inc.*, No. 10-7181, 2011 U.S. Dist. LEXIS 75502, at *2 & ECF No. 35 (E.D. Pa.
2011) (same); *Astra USA, Inc.*, 2010 WL 2724512, at *6 (same).

The same result is compelled here when Defendants approached absent class members
*after* the filing of the action and for many, during the pendency of the certification motions, and
for some even after the classes had been certified by this Court. *See, e.g.* Arbitration Agreement,
ECF No. 154-4, at 1. Indeed, these individuals are hospitality employees such as housekeepers
and banquet servers, not sophisticated counsel, and they were told they were required to
complete the Arbitration Agreements in order to begin work. *See* Callas Decl. ¶ 8 (Defendants
note that "[a]fter the commencement of the instant lawsuit in January 2016, the Hotel
implemented a policy requiring all new employees who were not employed prior to the
commencement of this action, to agree *immediately before* commencing their employment with
the Hotel to arbitrate any disputes they have with the Hotel.") (emphasis added). As explained
above, these individuals were members of the class, and, accordingly were effectively
represented by counsel. *See In re Currency I*, 224 F.R.D. at 569. Defendants' improper conduct
provides multiple independent grounds for invalidating the waiver of rights contained in the
Arbitration Agreements under both Rule 23(d) and the doctrine of unconscionability. *See Eisen*,
244 F.Supp.3d at 341. Thus, Defendants' Arbitration Agreements should be voided.

### E.     The Terms of the Agreement Itself Render It Unenforceable As Substantively Unconscionable

Defendants not only improperly obtained the Agreements, they made sure to write them in a way that benefitted the Defendants at the expense of the absent class members. Indeed, the Arbitration Agreements here are substantively unconscionable for at least two reasons. *First*, Defendants' addition of a term expanding arbitration to all employment-related disputes was clearly intended to provide Defendants with an unfair advantage in this litigation and any resulting (individual) arbitration. *See Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1202 (11th Cir. 1985) ("When confronted with claims pressed by a plaintiff class, it is obviously in defendants' interest to diminish the size of the class and thus the range of potential liability by soliciting exclusion requests. Such conduct reduces the effectiveness of the 23(b)(3) class action for no reason except to undermine the purposes of the rule.") (citation omitted).

*Second*, the Arbitration Agreements are not entirely bilateral. Indeed, an exception to arbitration is made to allow Defendants—and only Defendants—to litigate certain claims: "The Agreement shall explicitly exclude the requirement to arbitrate any claims by the Employer for injunctive relief, which may be brought in a court of competent jurisdiction." *See, e.g.* Arbitration Agreement, ECF No. 154-4, at 1. Defendants want to have their cake and eat it too. They want to ensure these class members may not participate in any case against Defendants, while making sure that if they need something quickly, Defendants get to do so in court.

### CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied.

Dated: June 7, 2022                    **BLACK & BUFFONE PLLC**


By:  _John W. Black_


Samuel J. Buffone, Jr.
D.C. Bar 1721688
John W. Black
D.C. Bar 989303
1400 Eye St. NW
Suite 200
Washington, D.C. 20005
Telephone: (202) 997-8562
Sam@blackandbuffone.com
John@blackandbuffone.com

**THOMAS & SOLOMON LLP**
Jessica L. Lukasiewicz, Esq.
693 East Avenue
Rochester, New York 14607
Telephone: (585) 272-0540
jlukasiewicz@theemploymentattorneys.com


*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that, on the 7th day of June, 2022, I caused this document to be filed electronically through the Court's electronic-filing system, which automatically sent a notice of electronic filing to all counsel of record.

Dated: June 7, 2022                              **BLACK & BUFFONE PLLC**


By:  *s/ John W. Black*

Samuel J. Buffone, Jr.
D.C. Bar 1721688
John W. Black
D.C. Bar 989303
1400 Eye St. NW
Suite 200
Washington, D.C. 20005
Telephone: (202) 997-8562
Sam@blackandbuffone.com
John@blackandbuffone.com

*Attorneys for Plaintiffs*

27