UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
DEANNA CAROLLO and DIANA J. OWENS,
on behalf of themselves and all other employees
similarly situated,

                    *Plaintiffs*,

v.                                              No. 6:16-cv-00013

UNITED CAPITAL CORP.,
AFP MANAGEMENT CORP., and
AFP 101 CORP.,

                    *Defendants*.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                        OF COUNSEL:

BLACK & BUFFONE PLLC                JOHN W. BLACK, ESQ.
*Attorneys for Plaintiffs*           SAMUEL J. BUFFONE, JR., ESQ.
1400 Eye St. NW, Suite 200
Washington, D.C. 20005

THOMAS & SOLOMON LLP
*Attorneys for Plaintiffs*           JESSICA L. LUKASIEWICZ, ESQ.
693 East Avenue
Rochester, New York 14607

MILMAN LABUDA LAW GROUP PLLC   ROBERT F. MILMAN, ESQ.
*Attorneys for Defendants*           JAMIE S. FELSEN, ESQ.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042

DAVID N. HURD
United States District Judge

## **MEMORANDUM-DECISION and ORDER**

## I. **INTRODUCTION**

Plaintiffs Deanna Carollo and Diana J. Owens, on behalf of themselves and all other employees similarly situated (together, "plaintiffs"), bring this certified class action against defendants United Capital Corp., AFP Management Corp., and AFP 101 Corp. (together, "defendants").  Plaintiffs, current and former service workers who have worked at the Radisson Hotel-Utica Centre[1] (the "Hotel"), allege that defendants' policies for paying servers violate the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").

Defendants, certain entities related to the Hotel's operation and management, seek dismissal of the claims of absent class members under Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6) and to compel arbitration under §§ 2, 3, and 4 of the Federal Arbitration Act ("FAA"). According to defendants, the absent class members are bound by arbitration agreements and thus required to arbitrate any claims they wish to assert.

Plaintiffs have responded to defendants' motion, and defendants have not put forth a reply.  The Court will now consider defendants' motion on the basis of the parties' submissions without oral argument.

---

[1] The Hotel is now a Delta Hotel by Marriott.

## II. <u>BACKGROUND</u>

On January 5, 2016, plaintiffs filed a class action complaint against defendants alleging that the Hotel's policies for paying its servers violate New York and federal law. *See generally* Dkt. 1. Specifically, plaintiffs challenge defendants' alleged practices of: (i) failing to pay minimum wages; (ii) improperly calculating the regular rate used to calculate overtime pay of banquet service workers; (iii) illegally retaining mandatory charges collected from customers; (iv) paying subminimum wages; and (v) failing to provide wage notices.

The parties engaged in pre-certification discovery throughout 2016, after which defendants moved for summary judgment and plaintiffs moved for class certification. *See* Dkt. 68, 150, 153. On March 24, 2021, the Court denied defendants' motion for summary judgment and certified the class. Dkt. 87. Additionally, over the past six years, the parties have thoroughly litigated this action by, *inter alia*: (i) fully briefing four motions; (ii) unsuccessfully attempting to mediate on two separate occasions; (iii) filing over 20 letters to the Court; (iv) conducting 14 depositions; (v) submitting and responding to a combined 753 discovery requests; and (vi) producing a combined 37,900 documents. *See* Dkt. 149-1 at ¶ 3.[2]

---

[2] Even considering just the time since the Court granted plaintiffs' certification motions, the parties have been particularly active. Indeed, since the Court's certification order, the parties have completed eight depositions, conducted a failed mediation, sent eleven letters to the Court, produced

After plaintiffs commenced this action, the Hotel implemented a policy requiring all new employees who were not employed prior to the commencement of this action to agree to arbitrate any disputes they have with the Hotel prior to the commencement of their employment.  Dkt. 145-3 at ¶ 8.  The Hotel did not require employees who were hired by the Hotel prior to the commencement of this action to agree to arbitrate any disputes they have with the Hotel.  *Id.*  Ultimately, 195 employees hired to work at the Hotel after the commencement of this action signed arbitration agreements (the "Arbitration Agreements" or "Agreements") immediately prior to commencing employment with the Hotel.  *See generally* Dkt. 145-4. Additionally, the Hotel hired 22 employees after the commencement of this action who did not sign the Agreements, though defendants aver that these employees received the agreement, began working for the Hotel after receiving it, and continued to work thereafter.  Dkt. 145-3 at ¶ 9.

Defendants did not identify this pending class action in the Arbitration Agreements.  Dkt. 149-1 at ¶ 6.  Moreover, the Agreements did not inform employees that signing would eliminate their opportunity to participate in this action.  *Id.* at  ¶ 7.  However, the Agreements did require employees to submit to arbitration all disputes that concern "any and all controversies,

---

nearly 20,000 pages of documents (including absent class members' payroll, time, and personnel documents), and conferred as to discovery issues on numerous occasions.  Dkt. 149-1 at ¶ 4.

claims, or disputes … arising out of [their] employment with the [Employer],"
including wage claims under federal and state law.  *See generally* Dkt. 145-4.
The Agreements also require the employee to agree that "arbitration shall be
the sole, exclusive and final remedy for any dispute between the [Employer]
and me."  *See id.*

On May 15, 2017, plaintiffs moved for certification of several classes.  Dkt.
72.  On March 24, 2021, the Court granted plaintiffs' motion for class
certification.  Dkt. 87.  Of the 195 Arbitration Agreements at issue (and the
22 additional unsigned Agreements), 138 were executed after plaintiffs filed
their class certification motions, and two were executed after the Court's
March 24, 2021 order.  The deadline to opt-out of the class was July 23, 2021.

## III. **LEGAL STANDARD**[3]

The FAA provides that an arbitration agreement "shall be valid,
irrevocable, and enforceable, save upon such grounds as exist at law or in
equity for the revocation of any contract."  9 U.S.C. § 2.  Moreover, the FAA
states that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to
> arbitrate under a written agreement for arbitration may petition any
> United States district court which, save for such agreement, would have
> jurisdiction under Title 28, in a civil action or in admiralty of the subject
> matter of a suit arising out of the controversy between the parties, for an

[3] Though defendants seek dismissal of the absent class members under Rules 12(b)(1) and 12(b)(6) as well as to compel arbitration pursuant to §§ 2,3, and 4 of the FAA, the parties argue the motion solely within the latter framework, and the Court will analyze it according to the same.

order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

"Courts consider two factors when deciding if a dispute is arbitrable: '(1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue.'" *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 179 (2d Cir. 2021) (quoting *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015)).  In considering the first question – whether the parties agreed to arbitrate – courts look to state contract law principles.  *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 222 (2d Cir. 2019) (citation omitted).  Typically, as a matter of federal law, doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. BMC Stock Holdings, Inc.*, 796 F. App'x 45, 48 (2d Cir. 2019) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

In deciding a motion to compel arbitration, courts apply a standard similar to that applied to a motion for summary judgment.  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).  That is, the court must consider "all relevant admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with ... affidavits," and "draw all reasonable inferences in favor of

the non-moving party." *Id*. (citation omitted).  The party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000)).

## IV. <u>DISCUSSION</u>

Plaintiffs first argue that defendants have waived their right to arbitrate the absent class members' claims.  Because the Court agrees, it need not go further in its analysis.

Prior to the Supreme Court's May 23, 2022 decision *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022), courts in the Second Circuit considered three factors when determining whether a party waived its right to arbitration: (i) the time elapsed from when litigation was commenced until the request for arbitration; (ii) the amount of litigation to date, including motion practice and discovery; and (iii) proof of prejudice.  *La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010) (citation omitted); *see also LifeTree Trading Pte., Ltd. v. Washakie Renewable Energy, LLC*, 764 F. App'x 105, 107 (2d Cir. 2019).  However, in *Morgan*, the Supreme Court considered the Eighth Circuit's two-factor waiver test and determined that a waiver analysis in the arbitration context cannot consider prejudice.  *Morgan*, 142 S. Ct. at 1714.  The court then remanded the case to

7

the Eighth Circuit to focus on whether the defendant had "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right" – or, in other words, to consider solely the non-prejudice factor.  *Id.*

Since *Morgan*, the Second Circuit has not ruled on whether a new standard applies to motions to compel arbitration.  The limited number of sister courts within this circuit to consider the issue have either: (i) simply used the Second Circuit's existing test, albeit without the prejudice prong, *see De Jesus v. Gregorys Coffee Mgmt., LLC*, 2022 WL 3097883, at *7 (E.D.N.Y. Aug. 4, 2022); or (ii) analyzed waiver under the framework described in the first point, as well as under a traditional contractual waiver analysis, *see Herrera v. Manna 2nd Ave. LLC*, 2022 WL 2819072, at *8 (S.D.N.Y. July 18, 2022).[4]

Because the court in *Morgan* commented that, on remand, the Eighth Circuit could simply "strip" its existing arbitration waiver test "of its prejudice requirement," *Morgan*, 142 S. Ct. at 1714, the Court elects to use the former approach, considering: (i) the time elapsed from when plaintiffs commenced litigation until defendants requested arbitration; and (ii) the amount of litigation to date.

---

[4] *Herrera* noted that, in that instance, it did not matter which test the court used because the result would be the same either way.  *Herrera*, 2022 WL 2819072, at *8.

Drawing all reasonable inferences in favor of plaintiffs, yet remaining mindful that "[w]aiver is not to be lightly inferred," *Nicosia*, 815 F. App'x at 614, the Court finds that the remaining two factors in the Second Circuit's existing test weigh in favor of waiver.

Before conducting a waiver analysis, the Court notes that the parties disagree on which period the Court should consider.  Defendants claim that, since this is a class action, the earliest time they could have moved to compel arbitration was after the opt-out deadline.  This approach would effectively constrict the Court's waiver inquiry to a roughly eight-month window.[5]  On the other hand, plaintiffs seek to consider the entire six-year period dating from the commencement of this action.

While some courts state that, in the class action context, the earliest time to compel arbitration is after class certification, others have considered pre-certification motions to compel arbitration.  *Compare Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 234 (S.D.N.Y. 2020) (stating that the earliest time to move to compel arbitration is after class certification) *with Doe v. Trump Corp.*, 453 F. Supp. 3d 634, 638 (S.D.N.Y. 2020), *aff'd*, 6 F.4th 400 (2d Cir. 2021) (considering a pre-certification motion to compel arbitration).  Ultimately, neither party has directed the Court to any binding

---

[5]  Defendants' proposed window would consist of the period between the July 23, 2021 opt-out deadline and defendants' May 24, 2022 filing of this motion, while also taking into account that the case was stayed between February 23, 2022 and May 10, 2022.

Second Circuit authority speaking directly on this issue, and the Court has not uncovered any on its own.

Were the Court to take plaintiffs' approach, the waiver issue would not be a close question. A roughly six-year period, during which the parties engaged in substantive motion practice, undertook extensive discovery, participated in two mediations, and contributed to more than 170 docket entries, is more than sufficient to support a finding of waiver.

However, even under defendants' more restrictive approach, the Court finds that they have waived their right to compel arbitration.

The first factor – time elapsed from when plaintiffs commenced litigation until defendants requested arbitration, modified by the above class action considerations – favors waiver. As noted, defendants filed the instant motion on May 24, 2022, and the case was stayed between February 23, 2022 and May 10, 2022, meaning that approximately eight months elapsed before defendants sought to arbitrate the absent class members' claims. This delay is in line with, or even exceeds, cases in this circuit where courts have found waiver. *See, e.g.*, *PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 108 (2d Cir. 1997) (finding waiver partly because "approximately five months passed between the time defendants asserted arbitrable claims and [the plaintiff] filed its petition to compel"); *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 26 (2d Cir. 1995) (finding waiver partly because

defendant allowed seven months to elapse before seeking to enforce arbitration clause); *Trump Corp.*, 453 F. Supp. 3d at 643-44 (finding waiver partly because eight months elapsed between commencement of litigation and request for arbitration).

The second factor – the amount of litigation to date, again modified by the class action considerations – also favors waiver.  "The Second Circuit has generally found that a party waives its right to arbitrate 'when it engages in protracted litigation,' such as 'extensive pre-trial discovery' and 'substantive motions' over the course of several months before seeking arbitration." *Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 101 (S.D.N.Y. 2017) (quoting *PPG Indus.*, 128 F.3d at 107-08).

Even considering just the time since the Court granted plaintiffs' certification motions, the parties have been particularly active.  Indeed, since the certification order, the parties have, *inter alia*, completed at least seven depositions, conducted a failed mediation, sent eleven letters to the Court, responded to approximately 268 discovery requests, produced nearly 20,000 pages of documents (including absent class members' payroll, time, and personnel documents), and conferred as to discovery issues on numerous occasions.  Dkt. 149-1 at ¶ 4.

While all of this litigation cuts in favor of waiver, it is the extensive amount of discovery that does so most strongly.  *See Leadertex*, 67 F.3d at 26

(finding seven-month delay, during which defendant vigorously pursued discovery, "strongly implies [the party] forfeited its contractual right to compel arbitration").  This is especially true because some of the discovery, at least as it relates to absent class members, would likely be unavailable during arbitration.  *See Cotton v. Slone*, 4 F.3d 176, 179-80 (2d Cir. 1993) (finding that party's engagement in discovery procedures not available in arbitration supported waiver finding); *Zwitserse Maatschappij Van Levensverzekering En Lijfrente v. ABN Int'l Cap. Markets Corp.*, 996 F.2d 1478, 1480 (2d Cir. 1993) (per curiam) (finding waiver partly because party engaged in discovery not available in arbitration).

In sum, an eight-month delay and the substantial amount of litigation and discovery that has taken place since class certification support a finding that defendants waived their right to arbitrate the absent class members' claims.

## V. <u>CONCLUSION</u>

Therefore, it is

ORDERED that

1. Defendants' motion to dismiss the absent class members and compel arbitration is DENIED.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  October 17, 2022
    Utica, New York.